Thomas Ray **BREWER, Individually and as Representative of the Class of All Owners of General Motors Corporation Vehicles with Defective Restraint Systems, Appellants.**

v.

**GENERAL MOTORS CORPORATION and Carter–Wood Motor Company, Appellees.**

No. 06–95–00060–CV.

Court of Appeals of Texas, Texarkana.

Submitted March 5, 1996.

Decided May 8, 1996.

Appellees' Rehearing Granted in Part and Overruled in Part with Substituted Opinion, June 11, 1996.

Appellants' Rehearing Overruled and Appellees' Rehearing Overruled with Opinion on Motion for Rehearing, July 9, 1996.

**776**

John R. Mercy, Atchley, Russell, Waldrop, Texarkana, David C. Turner, Jr., Bonham, Lynn A. Grisham, Waltman & Associates, Bryan, for Appellants.

Edward E. Ellis, Ellis & Clark, Paris, A. Erin Dwyer, Figari & Davenport, Dallas, Lee A. Schutzman, General Motors Corp., Detroit, MI, for Appellees.

Before CORNELIUS, C.J., and GRANT, J.[1]

## OPINION

CORNELIUS, Chief Justice.

Thomas Brewer and the other named plaintiffs filed this class action against General Motors Corporation and Carter–Wood Motor Company on behalf of all persons who, as of August 29, 1994, owned General Motors passenger cars manufactured since 1987 that have nonmotorized three-point restraint systems employing door-mounted restraint retractors, which systems purport to be automatic or passive in nature. The principal allegation of the suit was that General Motors had defectively designed and manufactured the restraint system in a way that discouraged users from using the system because they had to disengage the retractors in order to conveniently and efficiently exit the vehicles. The plaintiffs, however, also allege that General Motors, in designing and mar-

---

1. Justice Charles Bleil was a member of the Court when this case was argued and submitted, and participated fully in the consideration of this case, but resigned from the Court before the opinion was issued.

keting the system, committed fraud, made negligent and deliberate misrepresentations, breached warranties, failed to warn of latent dangers, and violated the Texas Deceptive Trade Practices Act.[2] Plaintiffs seek damages and injunctive relief. The trial court has not yet certified the class.

General Motors moved for summary judgment on the principal basis of federal preemption, alleging that the restraint system used in the vehicles in question was expressly authorized as one of the options manufacturers could use pursuant to regulations promulgated under the Motor Vehicle Safety Act,[3] specifically Standard 208. General Motors also contended that summary judgment was proper because Texas law precludes any recovery for strict liability or negligence that causes only economic damages, and because the plaintiffs alleged no specific product failure, but only a risk of failure, and also because plaintiffs failed to give proper notice.

Plaintiffs filed a response to General Motors' summary judgment motion and also filed an amended petition setting out specific causes of action for fraud and violations of the DTPA.

The court granted General Motors' summary judgment motion in all respects and ordered that plaintiffs take nothing "with respect to their claims asserted herein." After Carter–Wood filed a summary judgment motion on the same grounds that General Motors asserted, the court granted summary judgment in its favor.

■ Summary judgment for a defendant is proper only when the defendant establishes that no genuine issue of material fact exists as to one or more essential elements of the plaintiff's case, and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). A summary judgment cannot be upheld on any ground not presented in the summary judgment motion. *Hall v. Harris County Water Control & Improvement Dist.,* 683 S.W.2d 863, 867 (Tex.App.— Houston [14th Dist.] 1984, no writ). When a trial court's order granting summary judg-

ment does not specify the grounds for its ruling, the summary judgment will be affirmed if any of the theories advanced in the summary judgment motion are meritorious. *Insurance Co. of N. Am. v. Security Ins. Co.,* 790 S.W.2d 407, 410 (Tex.App.—Houston [1st Dist.] 1990, no writ). The fact that a plaintiff amends his petition and adds new causes of action after a defendant files its summary judgment motion does not change the defendant's burden to establish its entitlement to summary judgment as a matter of law on each cause of action alleged. Tex.R. Civ. P. 166a(c); *Clark v. First Nat'l Bank of Highlands,* 794 S.W.2d 953, 955–56 (Tex.App.— Houston [1st Dist.] 1990, no writ); *Whiddon v. Metni,* 650 S.W.2d 904, 905–06 (Tex.App.— Dallas 1983, writ ref'd n.r.e.).

■ As a threshold question, we determine if the judgment is final and appealable or is interlocutory. The court initially granted General Motors' motion for summary judgment "in all respects" and ordered that plaintiffs take nothing against General Motors "with respect to their claims asserted." Later, the court granted Carter–Wood's motion for summary judgment on the same grounds that General Motors asserted. Because the summary judgments specifically referred only to the grounds raised in General Motors' motion, and there was no severance, it appeared to be interlocutory. But because it clearly purported to dispose of all parties and all issues, it is a final judgment for appeal purposes. *Mafrige v. Ross,* 866 S.W.2d 590 (Tex.1993). The judgment, however, cannot be upheld as to causes that were not addressed in the motions.

■ General Motors and Carter–Wood did not address in their motions all causes of action alleged in the plaintiffs' second amended petition. The trial court's order granting summary judgment did not specify the grounds on which it was rendered. Therefore, unless the grounds raised in the summary judgment motions conclusively foreclosed all the plaintiffs' claims asserted in the amended petition, the judgment was improper.

---

**2.** Tex. Bus. & Com.Code Ann. § 17.41, et seq. (Vernon 1987 & Supp.1996).

**3.** 49 U.S.C.A. § 30101 (West 1996).

It appears that the basis for the trial court's summary judgment was its opinion that federal law preempts all of the plaintiffs' claims. This view is correct only if the federal statutes indicate a clear intention to occupy the entire field of automotive safety. If the federal law is limited to the express statutory reach concerning automobile safety measures, then in this case only the specific options for restraint systems allowed by the federal regulations are preempted in any event.

In 1966, Congress enacted the Safety Act to "reduce traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C.A. § 30101 (West Supp.1996).[4] The Act requires the Secretary of Transportation to prescribe motor vehicle safety standards, 49 U.S.C.A. § 30111(a) (West Supp.1996), which are minimum standards for motor vehicles or motor vehicle equipment performance, 49 U.S.C.A. § 30102(a)(9) (West Supp.1996).

The Act's preemption clause provides:

**Preemption.**—(1) When a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter. However, the United States Government, a State, or a political subdivision of a State may prescribe a standard for a motor vehicle or motor vehicle equipment obtained for its own use that imposes a higher performance requirement than that required by the otherwise applicable standard under this chapter.

49 U.S.C.A. § 30103(b) (West Supp.1996).

The Act, however, contains a savings clause which provides that, "Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." 49 U.S.C.A. § 30103(e) (West Supp.1996). The National

Highway Traffic Safety Administration promulgates safety standards under authority from the Secretary of Transportation. 49 C.F.R. § 1.50(a) (1996).

At issue here is Federal Motor Vehicle Safety Standard 208, governing automobile passenger restraint systems. The standard allows three passenger restraint options: (1) frontal/angular automatic protection; (2) head-on automatic protection; or (3) manual three-point seat belts. 49 C.F.R. § 571.208(4.1.2.1–.3) (1996). Manufacturers were not required to install passive restraints, but those that chose to do so were given options. Those that installed an automatic belt-based system "that provides both pelvic and upper torso restraint may have either a detachable or nondetachable upper torso portion, notwithstanding provisions of the option under which it is furnished." 49 C.F.R. § 571.208(4.5.3.2) (1996).

Both federal statutes and regulations can preempt state laws. U.S. CONST. art. VI, cl. 2; *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712–14, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721 (1985). There is a presumption, however, against federal preemption, and courts begin their review of the question with the assumption that federal law will not supersede historic state powers unless it is clear that it was Congress' manifest purpose to do so. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447, 1448 (1947). In determining whether federal law preempts and thereby invalidates state law under the Constitution's Supremacy Clause, the Court's sole task is to ascertain congressional intent. *California Fed. Sav. and Loan Ass'n v. Guerra*, 479 U.S. 272, 280–81, 107 S.Ct. 683, 689, 93 L.Ed.2d 613, 623 (1987). Congress may explicitly state its preemption intent in federal statutory language, *Moore v. Brunswick Bowling & Billiards Corp.*, 889 S.W.2d 246, 247 (Tex.), *cert. denied,* —— U.S. ——, 115 S.Ct. 664, 130 L.Ed.2d 599 (1994), or courts may presume

---

**4.** The Safety Act was recently recodified and moved from Title 15 to Title 49 of the United States Code. Although Congress made some "technical improvements" to language during recodification to promote clarity and consistency and to avoid surplusage, Congress took precautions "against making substantive changes in the law." H.R.Rep. No. 103–180, 103d Cong., 1st Sess. (1993), *reprinted in* 1994 U.S.C.C.A.N. 818. For consistency, we use the current citations.

Congress' intent to preempt when federal legislation is so pervasive that it leaves no room for states to supplement it. This is implied "field" preemption. State law may also be preempted when it actually conflicts with federal law. This is implied "conflict" preemption. State law conflicts with federal law when it is impossible to comply with the law of both or when state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

Where Congress has considered preemption and has included in the legislation a provision explicitly addressing that issue, and when the provision provides a reliable indication of congressional intent concerning state authority, it is not necessary for the courts to infer congressional preemptive intent from the substantive provisions of the legislation. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978)). This rule is a variant of the principle of *expressio unius est exclusio alterius:* a provision defining the preemptive reach of a federal statute implies that matters beyond that reach are not preempted. *Cipollone v. Liggett Group, Inc., supra.*

Some commentators after *Cipollone* suggested that if Congress included a preemption clause in a statute, courts could not infer either implied field or implied conflict preemption,[5] but the Supreme Court in *Freightliner Corp. v. Myrick*, 514 U.S. ——, ——, 115 S.Ct. 1483, 1487–88, 131 L.Ed.2d 385, 393 (1995), rejected this view. It said it was not announcing a new rule in *Cipollone*, but was relying on a familiar canon of statutory construction. The fact that an express definition of the preemptive reach of a statute supports a reasonable inference that Congress did not intend to preempt other matters does not

mean that the express clause entirely forecloses any possibility of implied preemption.

■ Texas courts and the United States Court of Appeals for the Fifth Circuit have held that the Safety Act does not expressly preempt state common law. *Perry v. Mercedes Benz of N. Am., Inc.*, 957 F.2d 1257, 1264 (5th Cir.1992); *Alvarado v. Hyundai Motor Co.*, 908 S.W.2d 243, 249 (Tex.App.—San Antonio 1995, writ granted); *Marrs v. Ford Motor Co.*, 852 S.W.2d 570, 576 (Tex. App.—Dallas 1993, no writ); *Turner v. General Motors Corp.*, 514 S.W.2d 497, 505–06 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). Federal law, however, may preempt state statutes and regulations. *Perry v. Mercedes Benz of N. Am., Inc., supra; Alvarado v. Hyundai Motor Co., supra; Marrs v. Ford Motor Co., supra.*[6]

Most courts interpret the Motor Vehicle Safety Act's savings clause as expressly preserving state common law claims, *Perry v. Mercedes Benz of N. Am., Inc., supra; Alvarado v. Hyundai Motor Co, supra; Marrs v. Ford Motor Co., supra*, but not common law claims that conflict with or subvert the objectives and methods of the federal scheme. *Perry v. Mercedes Benz of N. Am., Inc.*, 957 F.2d at 1265; *see Alvarado v. Hyundai Motor Co, supra; Marrs v. Ford Motor Co., supra.*

A few courts, however, have found that the statute preempts state common law claims. *See, e.g., Vanover v. Ford Motor Co.*, 632 F.Supp. 1095, 1096–97 (E.D.Mo.1986); and *Cox v. Baltimore County*, 646 F.Supp. 761, 763 (D.Md.1986). The United States Supreme Court in *Myrick* specifically declined to address this issue. *Freightliner Corp. v. Myrick, supra* at n. 3.

■ We conclude that the Motor Vehicle Safety Act and the regulations promulgated

5. Kurt B. Chadwell, Comment, *Automobile Passive Restraint Claims Post–Cipollone: An End to the Federal Preemption Defense*, 46 Baylor L. Rev. 141 (1994).

6. *See also Buzzard v. Roadrunner Trucking, Inc.*, 966 F.2d 777 (3d Cir.1992); *Pokorny v. Ford Motor Co.*, 902 F.2d 1116 (3d Cir.), *cert. denied*, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990); *Taylor v. General Motors Corp.*, 875 F.2d 816 (11th Cir.1989), *cert. denied*, 494 U.S. 1065,

110 S.Ct. 1781, 108 L.Ed.2d 783 (1990); *Kitts v. General Motors Corp.*, 875 F.2d 787 (10th Cir. 1989), *cert. denied*, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990); *Wood v. General Motors Corp.*, 865 F.2d 395 (1st Cir.1988), *cert. denied*, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990); *Gingold v. Audi–NSU–Auto Union, A.G.*, 389 Pa.Super. 328, 567 A.2d 312 (1989).

thereunder do not evince a clear intention to occupy the entire field of automotive safety. Consequently, the other causes of action asserted in the plaintiffs' amended petition are not preempted, and the summary judgment on those issues on the ground of federal preemption was not proper.

We also conclude that the Act and the regulations thereunder only preempt state common law claims that conflict with or obstruct the purposes of the federal law. Whether specific complaints about the design of the restraint system involved here are preempted depends on exactly what kind of defects the plaintiffs complain about. If their complaints are about designs specifically allowed by the Standard 208 option, the claims will be preempted. If plaintiffs are claiming that the restraint system was defectively designed or manufactured despite being in compliance with the Standard 208 option, the claims in that regard will not be preempted.

We cannot tell from the pleadings and summary judgment evidence exactly what kind of defect plaintiffs claim the system has. That will need to be fleshed out and detailed specifically in the trial court. Because the judgment must be reversed and the cause remanded, the issues of conflict with federal standards can be addressed at the trial.

We also conclude that plaintiffs' claims of strict liability, negligence, and breach of warranty are not shown by the summary judgment evidence to be preempted by federal law.

Plaintiffs also complain of marketing defects, fraud and deceit, and DTPA violations. Federal law does not preempt these claims, because federal regulations are silent about automobile marketing in this area. General Motors and its dealers could market the system in accord with Texas common law and Texas statutes, such as the DTPA and principles of common law fraud, and still exercise their federally granted design and manufacturing options. The Safety Act preempts states from enacting nonidentical standards, but does not preempt state actions claiming fraud and deceit in a product's marketing.

General Motors contends that summary judgment was proper as to plaintiffs' claims for strict liability, negligence, and breach of warranty because (1) purely economic losses are not recoverable for products liability or negligence, (2) recovery for breach of warranty is not authorized because the plaintiffs do not allege any product failure, and (3) summary judgment was proper as to breach of warranty claims because plaintiffs failed to give proper notice and failed to preserve error in granting summary judgment.

We agree that, under Texas law, plaintiffs cannot recover purely economic losses to their products based either on strict liability or negligence. Our Supreme Court has held that a cause of action for strict liability in tort will not lie unless there is actual physical harm either to persons or to property. *Garcia v. Texas Instruments, Inc.*, 610 S.W.2d 456 (Tex.1980); *Lubbock Mfg. Co. v. Sames*, 598 S.W.2d 234 (Tex. 1980); *Mid Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.*, 572 S.W.2d 308 (Tex.1978); *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977); JAMES B. SALES, PRODUCT LIABILITY LAW IN TEXAS 476–77 (1985). Likewise, the court has held that when the loss is to the product itself, recovery may not be had on the basis of negligence. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493 (Tex.1991); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex.1986); *Arkwright–Boston Mfrs. Mutual Ins. Co. v. Westinghouse Electric Corp.*, 844 F.2d 1174 (5th Cir.1988). Plaintiffs here have suffered no physical harm and no physical damage to their property from the alleged torts of General Motors in strict liability or negligence. Consequently, summary judgment for General Motors and Carter–Wood on those claims was proper.

Finally, General Motors argues that the summary judgment was proper on the breach of warranty claims because plaintiffs failed to allege there had been any product failure, and they failed to give notice of their claim.

We conclude that plaintiffs have alleged a product failure. They have not alleged that the restraint system has failed in any partic-

ular accident or incident, but they have alleged that the system is inherently defective because of the manner in which it was built and, therefore, it is in a "constant state of failure." Such allegations and the summary judgment evidence supporting them are sufficient in this case to raise issues on breach of implied warranty and to defeat summary judgment.

A buyer is required to notify the seller that a breach of warranty has occurred in order to give the seller the opportunity to inspect the product to determine whether it was defective and to allow the seller the opportunity to cure the breach. Tex. Bus. & Com.Code Ann. § 2.607(c)(1) (Vernon 1994).

Although plaintiffs did not specifically allege in their second amended petition that they gave notice to General Motors and Carter–Wood, they did allege that all conditions precedent to the bringing of the suit had been met or had occurred. Neither General Motors nor Carter–Wood filed verified denials pursuant to Tex.R. Civ. P. 93(12). Without such verified denial of the notice and proof, the court shall presume such notice and shall admit no evidence to the contrary. *Id.*

When General Motors and Carter–Wood moved for summary judgment, their grounds included lack of notice. Plaintiffs in their summary judgment response failed to address General Motors' failure to file a verified pleading. Thus, although they raised the issue of lack of verified pleading on appeal, they have waived the complaint. *Towne Square Assocs. v. Angelina County Appraisal Dist.,* 709 S.W.2d 776, 777 (Tex. App.—Beaumont 1986, no writ).

Nevertheless, the summary judgment movants have the burden of proof, and this court must take as true all evidence favoring the nonmovant. *MMP, Ltd. v. Jones,* 710 S.W.2d 59 (Tex.1986). An appellate court cannot consider as grounds for reversal issues that the nonmovant did not expressly present to the trial court by written response to the summary judgment motion. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 676 (Tex.1979). The nonmovant who did not file a response to the motion may argue on appeal only that the motion was legally insufficient, *id.* at 678, which plaintiffs here do.

Although General Motors and Carter–Wood in their summary judgment motions argued that plaintiffs failed to provide notice, they offered no evidence to that effect. Proper summary judgment evidence consists of affidavits, admissions, stipulations, authenticated or certified public records, deposition transcripts, and interrogatory answers. The motion itself is not evidence. Tex.R. Civ. P. 166a(c); *Bakali v. Bakali,* 830 S.W.2d 251, 257 (Tex.App.—Dallas 1992, no writ). Under Rule 93(12), the court presumes such notice. Thus, they failed to meet their summary judgment burden, and they were not entitled to summary judgment based on lack of notice.

For the reasons stated, the summary judgment, insofar as it applies to plaintiffs' claims for economic loss to the product resulting from strict liability in tort and negligence, is affirmed. The other claims by plaintiffs are severed and the judgment, insofar as it applies to those claims, is reversed and remanded to the trial court for trial.

### ON REHEARING

In their motion for rehearing, General Motors and Carter–Wood Motor Company complain because we state that the summary judgment as to "plaintiffs' claims" is affirmed in part and reversed in part. They point out that only Thomas Ray Brewer, individually and as representative for the class members, has appealed. In using the term "plaintiffs'" we were referring to Brewer and the potential class members he represents. Our judgment applies only to Brewer and those potential class members as plaintiffs, and of course does not apply to the other originally named class representatives who did not appeal.

The motion for rehearing is overruled.