ACCEPTED
05-15-00115-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/29/2015 8:40:19 AM
LISA MATZ
CLERK

No. 05-15-00115-CV

IN THE FIFTH
COURT OF APPEALS
AT DALLAS, TEXAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/29/2015 8:40:19 AM
LISA MATZ
Clerk

SHIHAB DIAIS AND ODESSA DENTAL SOLUTIONS, P.A.,

Appellants

v.

LAND ROVER DALLAS, L.P. AND SNELL MOTOR COMPANY
OPERATIONS GP, LLC, GENERAL PARTNER,

Appellees

Appeal from the 14th Judicial District Court, Dallas County, Texas,
Cause No. DC-13-01137-A, the Honorable Eric V. Moyé, Presiding

## APPELLEES' BRIEF

Wade C. Crosnoe
State Bar No. 00783903
E-mail: wcrosnoe@thompsoncoe.com
Sara Berkeley Churchin
State Bar No. 24073913
E-mail: schurchin@thompsoncoe.com
John W. Chambless, II
State Bar No. 00796334
E-mail: jchambless@thompsoncoe.com
THOMPSON, COE, COUSINS & IRONS, L.L.P.
701 Brazos, Suite 1500
Austin, Texas 78701
Telephone: (512) 703-5035
Facsimile: (512) 708-8777

Counsel for Appellees

**IDENTITY OF PARTIES AND COUNSEL**

1.      Appellants/Plaintiffs Shihab Diais and Odessa Dental Solutions, P.A.

Trial and Appellate Counsel:

Jeffrey F. Thomason
Shane M. Bebout
Todd, Barron, Thomason, Hudman & Baxter P.C.
3800 E. 42nd Street, Suite 409
Odessa, Texas 79762-5982
Telephone: (432) 363-2103
Facsimile: (432) 363-2153
Email: Thomason@toddlawfirm.com
Email: SBebout@toddlawfirm.com

2.      Appellees/Defendants Land Rover Dallas, L.P. and Snell Motor Company Operations GP, LLC, General Partner

Trial and Appellate Counsel:

John W. Chambless, II
Thompson, Coe, Cousins & Irons, L.L.P.
701 Brazos, Suite 1500
Austin, Texas 78701
Telephone:  (512) 703-5073
Facsimile:  (512) 708-8777
Email: jchambless@thompsoncoe.com

Appellate Counsel:

Wade C. Crosnoe
Sara Berkeley Churchin
Thompson, Coe, Cousins & Irons, L.L.P.
701 Brazos, Suite 1500
Austin, Texas 78701
Telephone:  (512) 703-5035
Facsimile:  (512) 708-8777
Email: wcrosnoe@thompsoncoe.com
Email: schurchin@thompsoncoe.com

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL .................................................................i

TABLE OF CONTENTS................................................................................ ii

INDEX OF AUTHORITIES .........................................................................vi

STATEMENT REGARDING ORAL ARGUMENT...........................................xi

ISSUES PRESENTED ................................................................................ xii

I.      Diais Did Not Preserve Error on His Proposed Jury Questions and
        Instruction Because He Did Not Properly Object in the Trial Court
        and Obtain a Written Ruling............................................................. xii

II.     The Trial Court Properly Excluded Diais' Proposed Jury Question on
        Fraudulent Inducement Because No Evidence Supported Its
        Submission....................................................................................... xii

III.    The Trial Court Properly Excluded Diais' Negligent
        Misrepresentation Claim Because It Is Barred by the Economic Loss
        Rule and No Evidence Supports Its Submission ............................. xii

IV.     The Trial Court Properly Excluded a Jury Question for Invalidating
        the As-Is Clause ............................................................................. xii

V.      The Trial Court Properly Excluded a Jury Question on
        Unconscionable Conduct.................................................................. xii

VI.     The Trial Court Properly Excluded the Carfax Report (Diais' Exhibit
        No. 13). ........................................................................................... xii

VII.    Diais Was Not Entitled to a New Trial Based on His Alleged
        Discovery of New Evidence ............................................................ xii

VIII.   The Evidence is Legally and Factually Sufficient to Support the Jury's
        Findings .......................................................................................... xii

Statement of Facts....................................................................................1

I.      Purchase of the Range Rover............................................................1

II. The Diaises Experience Trouble with the Vehicle's Engine............................3

III. After Land Rover Dallas Repairs the Vehicle under Warranty, Diais Disclaims Ownership of the Vehicle and Refuses to Pick It Up....................4

IV. Diais Sues Land Rover Dallas ................................................................6

Summary of the Argument.............................................................................6

Argument......................................................................................................8

I. Diais Did Not Preserve Error on His Proposed Jury Questions and Instruction Because He Did Not Properly Object In the Trial Court and Obtain a Written Ruling...............................................................8

II. The Trial Court Properly Excluded Diais' Proposed Jury Question on Fraudulent Inducement Because No Evidence Supported Its Submission.................................................................................................9

    A. The record contains no evidence that Land Rover Dallas made a material misrepresentation that it knew to be false or with a reckless disregard for the truth...........................................................10

        1. The Range Rover was in fact new when sold to Diais. ............11

        2. The record contains no evidence that Land Rover Dallas made misrepresentations it knew to be false or with reckless disregard for the truth.................................................14

    B. The record contains no evidence of Land Rover Dallas's alleged fraudulent intent....................................................................16

    C. The record contains no evidence that Diais relied on any alleged misrepresentation in connection with the sale of the Range Rover ...........................................................................................17

        1. The "As-Is" Clause in the Contract Defeats the Element of Reliance and Causation .......................................................18

        2. Diais Admits That He Did Not Reply on Any Representations In Connection With the Sale of the Vehicle. ..............................................................................20

D. The record contains no evidence that Diais was damaged as a result of any alleged misrepresentations in connection with the sale. ..................................................................................................22

III. The Trial Court Properly Excluded Diais' Negligent Misrepresentation Claim Because It Is Barred by the Economic Loss Rule and No Evidence Supports Its Submission ............................................23

    A. The Economic Loss Rule Prevents Diais from Recovering in Tort for What Is a Contract Claim ......................................................23

    B. No Legally Sufficient Evidence Supported the Claim........................24

        1. Diais did not justifiably rely on any statements allegedly made by Land Rover Dallas.........................................................25

        2. No evidence supports the element of damages in Diais' negligent misrepresentation claim. ...........................................26

IV. The Trial Court Properly Excluded Jury Questions Relating to the Enforceability of the As-Is Clause ...............................................................26

V. The Trial Court Properly Declined to Submit a Jury Question on Unconscionable Conduct ................................................................................30

VI. The Trial Court Properly Excluded the Carfax Report (Diais' Exhibit No. 13). ...........................................................................................................32

VII. Diais Was Not Entitled to a New Trial Based on His Alleged Discovery of New Evidence ............................................................................35

    A. Diais Did Not Properly Present His Newly-Discovered Evidence Argument to the Trial Court; It Is Therefore Waived .........36

    B. The Evidence Is Not New; It Is Based on Information Known to Diais In Advance of Trial..................................................................37

    C. Diais Cannot Show That the Late Discovery of This Evidence Was Not Due To His Lack of Diligence ...........................................43

    D. Diais' "Newly Discovered" Evidence Is Not Material .......................46

VIII. The Evidence Is Legally and Factually Sufficient to Support the Jury's Findings ...................................................................................................48

    A.     Standard of Review ..............................................................................48

          **1.**    Legal Sufficiency .......................................................................48

          **2.**    Factual Sufficiency ...................................................................49

    B.     The Evidence Is Legally and Factually Sufficient to Support the Jury's Finding of No Liability on Diais' Breach of Contract Claim ......................................................................................................50

    C.     The Evidence Is Legally and Factually Sufficient to Support the Jury's Finding of No Liability on Diais' DTPA Claim ......................53

**PRAYER** ...........................................................................................................55

**CERTIFICATE OF COMPLIANCE**..................................................................................56

**CERTIFICATE OF SERVICE** .........................................................................................57

# INDEX OF AUTHORITIES

**Cases**

*Am. Eagle Ins. Co. v. United Techs. Corp.*,
48 F.3d 142, 144 (5th Cir. 1995) ...................................................................24

*Aquila Sw. Pipeline, Inc. v. Harmony Exploration, Inc.*,
48 S.W.3d 225, 236 (Tex. App.—San Antonio 2001, pet. denied).....................16

*Autohaus, Inc. v. Aguilar*,
794 S.W.2d 459, 463–64 (Tex. App.—Dallas) ...................................................15

*Brewer v. Gen. Motors Corp.*,
926 S.W.2d 774, 780 (Tex. App.—Texarkana 1996, no writ) ...........................24

*Bynum v. Prudential Residential Services, Ltd. Partnership*,
129 S.W.3d 781, 788 (Tex. App. —Houston [1st Dist.] 2004, pet.
denied).......................................................................................................19

*Carrow v. Bayliner Marine Corp.*,
781 S.W.2d 691, 695 (Tex. App.—Austin 1989, no writ.) .................................16

*Cason v. Taylor*,
51 S.W.3d 397, 408 (Tex. App.—Waco 2001, no pet.) ....................................54

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d
716, 718 (Tex. 2014)...................................................................................23

*Chastain v. Koonce*,
700 S.W.2d 579, 583–84 (Tex. 1985)........................................................ 30, 31

*City of Keller v. Wilson*,
168 S.W.3d 802, 809–10 (Tex. 2005)........................................................ 48, 49

*Cleveland Reg'l Med. Ctr., L.P. v. Celtic Properties, L.C.*,
323 S.W.3d 322, 339–41(Tex. App.—Beaumont 2010, pet. denied) ...................8

*Dow Chem. Co. v. Francis*,
46 S.W.3d 237, 241 (Tex. 2001)........................................................ 48, 49, 52

*Ellis Coutny State Bank v.Keever*,
888 S.W.2d 790, 794 (Tex. 1994)...................................................................50

vi

*Fed. Land Bank Ass'n of Tyler v. Sloane*,
825 S.W.2d 439, 442 (Tex. 1991)........................................................25

*Formosa Plastics Corp. USA v. Presidio Engineers and Contractors,
Inc.*,
960 S.W.2d 41, 46–47 (Tex. 1998)......................................................16

*Golden Eagle Archery, Inc.v. Jackson*,
116 S.W.3d 757, 762 (Tex. 2003)........................................................48

*Grant Thornton LLP v. Prospect High Income Fund*,
314 S.W.3d 913, 923 (Tex. 2010).........................................................17

*Gross v. WB Texas Resort Communities*, No.
02-12-00411, 2014 WL 7334950, at *7 (Tex. App.—Fort Worth
Dec. 23, 2014, no pet.) ........................................................................23

*Gym-N-I Playgrounds, Inc. v. Snider*,
220 S.W.3d 905, 913 (Tex. 2007)........................................................18

*Haase v. Glazner*,
62 S.W.3d 795, 798–99 (Tex. 2001).....................................................10

*Herrera v. Seton Nw. Hosp.*,
212 S.W.3d 452, 462–63 (Tex. App.—Austin 2006, no pet.) ............45

*Holley v. Watts*,
629 S.W.2d 694, 696 (Tex. 1982).........................................................49

*In re S.M.V.*,
287 S.W.3d 435, 451 (Tex. App.—Dallas 2009, no pet.) ..................38

*In re Thoma*,
873 S.W.2d 477, 512 (Tex. 1994).........................................................38

*Ins. Co. of N. Am. v. Morris*,
981 S.W.2d 667, 677 (Tex. 1998).........................................................30

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
341 S.W.3d 323, 33 (Tex. 2011)...........................................................10

*Jackson v. Van Winkle*,
660 S.W.2d 807, 809–10 (Tex. 1985)......................................... 38, 45, 46

*Jim Walter Homes, Inc. v. Reed*,
   711 S.W.2d 617, 618 (Tex. 1986)......................................................................24

*Kirkpatrick v. Mem'l Hosp. of Garland*,
   862 S.W.2d 762, 769 (Tex. App.—Dallas 1993, writ denied) ..............................9

*LAN/STV v. Martin K. Eby Constr. Co., Inc.*,
   435 S.W.3d 234, 238 (Tex. 2014).......................................................................23

*Lance v. USAA Ins. Co.*,
   934 S.W.2d 427, 429 (Tex. App.—Waco 1996, no writ)...................................54

*Larsen v. Carlene Langford & Assocs., Inc.*,
   41 S.W.3d 245, 253 (Tex.App.—Waco 2001, pet. denied)................................18

*Maritime Overseas Corp. v. Ellis*,
   971 S.W.2d 402,407 (Tex. 1998)........................................................................50

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*,
   991 S.W.2d 787, 791 (Tex. 1999)........................................................................25

*McGalliard v. Kuhlman*,
   722 S.W.2d 694, 697 (Tex.1986).........................................................................49

*Midcontinent Aircraft Corp. v. Curry County Spraying Serv., Inc.*,
   572 S.W.2d 308 (Tex. 1978)................................................................................23

*Mortiz v. Preiss*,
   121 S.W.3d 715 (Tex. 2003)................................................................................46

*Murray v. Ford Motor Co.*,
   97 S.W.3d 888, 890–93 (Tex. App.—Dallas 2003, no pet.) ..............................24

*Neyland v.* Raymond,
   324 S.W.3d 646, 656 (Tex. App.—Fort Worth 2010, no pet.)...........................44

*Nixon v. GMAC Mortg. Corp.*,
   No. 05-08-00256-CV, 2009 WL 2973660, at *3–4 (Tex. App.—
   Dallas Sept. 18, 2009, no pet.) ............................................................................44

*O'Connor v. Miller*,
   127 S.W.3d 249, 254 (Tex. App.—Waco 2003, pet. denied)..............................54

*Ortiz v. Jones*,
   917 S.W.2d 770, 772 (Tex. 1996).................................................................49

*Patriacca v. Frost*,
   98 S.W.3d 303, 307 (Tex. App. – Houston [1st Dist.] 2003, no pet.).................45

*Pipe Line Co., Inc. v. Tichacek*,
   997 S.W.2d 166, 172 (Tex. 1999).................................................................29

*Pool v. Ford Motor Co.*,
   715 S.W.2d 629, 633–34 (Tex. 1986).............................................................48

*Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*,
   896 S.W.2d 156, 161 (Tex. 1995)........................................................... passim

*Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*,
   896 S.W.2d 156, 162 (Tex. 1995)..................................................................14

*Rivera v. Countrywide Home Loans, Inc.*,
   262 S.W.3d 834, 844 (Tex. App.—Dallas, no pet.)..................................... 38, 44

*Rowlett/2000, Ltd. v. City of* Rowlett,
   231 S.W.3d 587, 590 (Tex. App.—Dallas 2007, no pet.) .................................50

*SelecTouch Corp. v. Perfect Starch, Inc.*,
   111 S.W.3d 830, 834 (Tex. App.—Dallas 2003, no pet.) .................................16

*Smith v. KNC Optical, Inc.*,
   296 S.W.3d 807, 811–12 (Tex. App.—Dallas 2009, no pet.) ............................16

*Snider*, 220 S.W.3d at 914 ....................................................................................19

*Spencer v. Eagle Star Ins. Co. of Am.*,
   876 S.W.2d 154, 156 (Tex. 1994)..................................................................29

*Sterner v. Marathon Oil Co.*,
   767 S.W.2d 686, 690 (Tex. 1989)..................................................................49

*Sw. Bell Telephone Co. v. DeLanney*,
   809 S.W.2d 493, 495 (Tex. 1991)..................................................................24

*Sw. Elec. Power Co. v. Burlington N. R.R. Co.*,
   966 S.W.2d 467, 474 (Tex. 1998)..................................................................35

*Tex. Dept. of Transp. v. Able*,
 35 S.W.3d 608, 617 (Tex. 2000).............................................................................29

*Tienda v. State*, 358 S.W.3d 633, 644–46 (Tex. Crim. App. 2012) ........................33

*Transport Ins. Co. v. Faircloth*,
 898 S.W.2d 269, 276–77 (Tex. 1995)......................................................................15

*Wackenhut Corp. v. Gutierrez*,
 453 S.W.3d 917, 920 (Tex. 2015)........................................................................8, 28

*Waffle House, Inc. v. Williams*,
 313 S.W.3d 796, 813 (Tex. 2010).................................................. 43, 46, 47, 48

*Welwood v. Cypress Creek Estates, Inc.*,
 205 S.W.3d 722, 726 (Tex.App.—Dallas 2006, no pet.) ....................................18

*Wilson*,
 168 S.W.3d at 819–20..............................................................................................54

**Statutes**
Tex. Bus. & Com. Code § 2.106.................................................................................63

Tex. Bus. & Comm. Code § 17.45(5)........................................................................42

Tex. Bus. & Comm. Code § 2.102.............................................................................28

**Other Authorities**
Restatement (Second) of Torts § 552.........................................................................37

Tex. Occ. Code Ann. § 2301.002(14)........................................................................23

**Rules**
Tex. R. App. P. 33.1(b)...............................................................................................48

Tex. R. App. P. 38.1(i)................................................................................................45

Tex. R. App. P. 61.1...................................................................................................41

Tex. R. Civ. Proc. 324................................................................................................48

## STATEMENT REGARDING ORAL ARGUMENT

Appellees agree with Appellants that oral argument is not necessary to determine the issues in this case, and therefore oral argument is not requested.

**ISSUES PRESENTED**

I.  Diais Did Not Preserve Error on His Proposed Jury Questions and Instruction Because He Did Not Properly Object in the Trial Court and Obtain a Written Ruling

II.  The Trial Court Properly Excluded Diais' Proposed Jury Question on Fraudulent Inducement Because No Evidence Supported Its Submission

III.  The Trial Court Properly Excluded Diais' Negligent Misrepresentation Claim Because It Is Barred by the Economic Loss Rule and No Evidence Supports Its Submission

IV.  The Trial Court Properly Excluded a Jury Question for Invalidating the As-Is Clause

V.  The Trial Court Properly Excluded a Jury Question on Unconscionable Conduct

VI.  The Trial Court Properly Excluded the Carfax Report (Diais' Exhibit No. 13).

VII.  Diais Was Not Entitled to a New Trial Based on His Alleged Discovery of New Evidence

VIII.  The Evidence is Legally and Factually Sufficient to Support the Jury's Findings

STATEMENT OF FACTS

Diais' perfunctory, argumentative, and conclusory statement of facts contains more record citations without explanatory support than it does actual facts about this case and its procedural background. Accordingly, Land Rover Dallas presents this more detailed and complete statement of facts.

## I.     Purchase of the Range Rover

This case involves the sale and operation of a 2012 Range Rover sport utility vehicle. Plaintiff, Dr. Shihab Diais, decided in 2012 to buy a new Range Rover for his wife because they had previously owned a Range Rover vehicle that was his wife's "passion" (2 RR 119–20).[1] He testified that they "didn't need any convincing" to make the purchase; "[they] wanted to stay with the Range Rover" (2 RR 120–22). Having already made up their minds on the car they wanted, the Diaises traveled by plane from their home in Odessa, Texas, to the Dallas Range Rover Dealership with the intention to purchase a new vehicle (2 RR 121–22).

At Land Rover Dallas, the Diaises noticed a Range Rover on the sales room floor that was "special," because it had been equipped with an Amani[2] body kit,

---

[1] Citations to the Reporter's Record in this Brief will be as follows: [Volume] RR [Page Number]. Citations to the Clerk's Record in this Brief will be as follows: [Volume] CR [Page Number]. The Reporter's Record does not contain page numbers beyond Volume 3, so the trial exhibits do not have page numbers. Hence, citations to the trial exhibits will be as follows: "([Vol.] RR __, [P's][D's] [Exhibit Number])."

[2] The Reporter's Record incorrectly refers to it as an "Armani" body kit (*See* 5 RR __, D's Ex. 5).

complete with custom wheels, rims, and bumpers (2 RR 155–56; 3 RR 17). This gave the car a "unique look" (3 RR 17).

Diais purchased the car jointly in his own name and the name of his dental practice, Odessa Dental Solutions, P.A (2 RR 151). The purchase price of the vehicle was $107,597.96 (2 RR 126; 4 RR __ P's Ex. 1), and it came with a four-year, 50,000-mile manufacturer's warranty (3 RR 21, 6 RR __, D's Ex. 21). Land Rover Dallas, who was not the manufacturer of the vehicle, did not provide a written warranty. (4 RR __, P's Ex. 1[3]; Attached as Apx. A). Land Rover Dallas sold the vehicle "as is" and with no warranty other than that provided by the manufacturer. (*Id.*)

Diais purchased the vehicle on a Saturday. He and Michael McGovern, a sales guide at Land Rover Dallas, agreed that Land Rover Dallas would keep the vehicle for a few days to wash it and make some touchups to the body paint (2 RR 123–24, 4 Supp. CR __[4]).

The following Wednesday, McGovern drove the Range Rover from Dallas to Odessa, without incident, where he delivered it to Diais' dental office (2 RR 123–25, 159–60). Diais has never complained about the condition of the Range

---

[3] The Sales Agreement referred to in this citation can also be found at 1 CR 107 as an attachment to Plaintiff's Motion for New Trial.

[4] Land Rover Dallas requested a supplemental clerk's record on June 10th to include this deposition testimony in the appellate record, but the clerk has not yet filed it. When it is filed, Land Rover Dallas will file an amended brief with the corresponding record citations.

Rover when it was delivered or argued that the body of the Range Rover was damaged prior to its delivery. (2 RR 158–59, 161).

Three days after the vehicle was delivered, the check engine light came on (2 RR 132, 159). Mrs. Diais called Land Rover Dallas and spoke to the service department. Gary Johnson, the dealer's Service Manager, told her that the check engine light is not a problem if it is not flashing and advised Mrs. Diais to bring the vehicle by the dealership the next time she came to Dallas (2 RR 209–10). The light soon turned off, however, and the vehicle ran fine (2 RR 211).

Diais subsequently drove the vehicle to Lubbock for a work conference with no problem (2 RR 164–65, 211–12). However, during that trip, Diais drove the vehicle through a severe West Texas thunder storm, which, according to his wife's testimony, caused damage to the body of the Range Rover (2 RR 222–23, 225).

## II. The Diaises Experience Trouble with the Vehicle's Engine

About two weeks later, the vehicle's engine started making a loud "knocking noise" (2 RR 133). The Diaises called Land Rover Dallas, which told him it would have the car towed in at its own expense to diagnose the problem (2 RR 133).

When Land Rover Dallas had the vehicle towed to its repair shop, Wayne Cloud, the Centre Manager of Land Rover Dallas, noticed damage to the vehicle, including damage to its body, liner, undercarriage, windshield, and wheels (2 RR

218).  Ms. Diais told Land Rover Dallas that the vehicle was damaged during the storm Diais encountered on his way to Lubbock (2 RR 225).

As for the engine issue, Land Rover Dallas informed Diais that the vehicle would require a new engine and that the dealership would be installing it, at no charge to Diais, under the manufacturer's warranty (2 RR 137).  However, it was explained to Diais that the body damage on the vehicle would not be covered under the manufacturer's warranty (2 RR 235).  Diais' insurance company sent an adjuster to estimate the body damage, and he concluded that four separate claims would have to be made on body damage (3 RR 7).[5]

### III.  After Land Rover Dallas Repairs the Vehicle under Warranty, Diais Disclaims Ownership of the Vehicle and Refuses to Pick It Up

After Land Rover Dallas informed Diais that it was replacing the engine under warranty, Diais emailed Cloud to say that his wife thought the vehicle was "jinxed" and that he no longer wanted it (2 RR 170–71).  Initially, Diais asked if he could get his money back so he could buy a different Range Rover from Land Rover Dallas (2 RR 173).  Cloud explained that the dealership could not simply

---

[5] The trial court refused to let Cloud testify before the jury regarding the number of insurance claims made on the body damage to the Range Rover (3 RR 7).  Counsel for Land Rover Dallas made an offer of proof on the record, explaining that Cloud would testify that the four separate insurance claims negatively affected the value of the Range Rover.  In addition, Land Rover Dallas would have offered insurance records containing correspondence between Diais and the insurance company about the storm damage sustained by Diais' Range Rover (*Id.*).  Land Rover Dallas also argued, during a pretrial hearing on a motion in limine regarding insurance, that this evidence was relevant to show that a dispute arose between Diais and his insurance company over the handling of the claim, and that this dispute was the real reason Diais decided he no longer wanted the vehicle (2 RR 14-15).

take back Diais' Range Rover because the body damage had significantly affected its value and would have to be disclosed to subsequent purchasers (2 RR 231–34). Cloud believed that the Range Rover was worth only $75,000 because of the body damage (2 RR 235).

Cloud, however, proposed a few options to Diais, including providing him an extended, 100,000-mile warranty or a "substitution of collateral" (trading his vehicle for another Range Rover on the same note) but the bank refused to substitute collateral due to the body damage the vehicle had sustained while in the Diaises' possession (2 RR 172–75, 231–32).

From that point on, Diais refused to pick up the vehicle, insisting repeatedly that he no longer owned it (2 RR 174). As one email put it, "[t]his is no longer my vehicle. It belongs to your dealership" (6 RR __, D's Ex. 26). Diais, however, continued to make payments on the vehicle and declared its depreciated value on his federal income taxes (2 RR 180–81). Yet the vehicle, fully repaired, remained parked at Land Rover Dallas. It remained there, unclaimed and unexamined by Diais or his attorneys, for the two years preceding the filing of this lawsuit (2 RR 176).[6]

---

[6] Because Diais never picked up his vehicle, he did not receive the Repair Order detailing the repairs Land Rover Dallas made on his vehicle. Although Diais argues that Land Rover Dallas "failed to disclose" to him that it made certain repairs to the vehicle—such as a battery replacement—this information was available to Diais upon pickup of his vehicle (2 RR 252–53).

5

## IV.    Diais Sues Land Rover Dallas

In January 2013, rather than pick up the repaired vehicle, Diais and his dental office (collectively "Diais") sued Land Rover Dallas and its General Partner, Snell Motor Company Operations GP, LLC (collectively, "Land Rover Dallas"). Dias asserted claims under the Texas Deceptive Trade Practices Act ("DTPA"), and for breach of contract, negligent misrepresentation, common law fraud, and attorney's fees (1 CR 5).

The case was tried to a jury. At the jury charge conference, the trial court refused Diais' proposed submissions on negligent misrepresentation and common law fraud (1 CR 49, 70–77); (3 RR 10–12). Land Rover Dallas moved for a directed verdict, which the trial court denied.

The jury returned a verdict against Diais on the liability theories submitted to the jury: DTPA and breach of contract (1 CR 70–77). The trial court denied Diais' motion for judgment notwithstanding the verdict and granted a take nothing judgment in favor of Land Rover Dallas (1 CR 95). The trial court denied Diais' Motion for New Trial by operation of law, without a hearing (2 CR 4). This appeal followed.

## SUMMARY OF THE ARGUMENT

The trial court properly excluded Diais' proposed jury questions on fraudulent inducement and negligent misrepresentation because there is no

evidence to support all, let alone any, of the elements of those claims. Although Diais' brief is replete with unexplained string citations to the record purporting to support the claims, he cannot point this Court to any evidence showing that Land Rover Dallas made actual fraudulent or false misrepresentations of fact concerning the condition of the Range Rover he purchased, much less that he justifiably relied on any such misrepresentations in making the purchase. The record is likewise bereft of any evidence that Land Rover Dallas had any intent to deceive Diais in connection with the vehicle's sale.

The evidence is both legally and factually sufficient to support the jury's verdict of no liability. The evidence presented at trial shows that Land Rover Dallas sold and delivered to Diais a "new" Range Rover in accordance with the terms of the parties' contract, and repaired the Range Rover under warranty when engine problems manifested several weeks after the sale. Diais sustained no damages caused by a breach or by Land Rover Dallas's conduct; rather, any damages Diais suffered are a result of his refusal to pick up his repaired vehicle from Land Rover Dallas.

Finally, Diais is not entitled to a new trial based on the discovery of alleged "new" evidence. The fact that Land Rover Dallas painted the Range Rover before delivering it to Diais in Odessa, Texas, was undisputedly known to Diais since he purchased the car. The fact that an after-market custom body kit was added to the

Range Rover before purchase—complete with custom wheels and tires—was also known to the Diaises since they first stepped foot inside Land Rover Dallas. Diais' "new" evidence, which he obtained after the close of trial, could have been obtained years ago, yet he failed to exercise due diligence in developing the issue or evidence for trial. In any event, Diais' argument that he is entitled to a new trial is waived because an evidentiary hearing was not held on the "new" evidence as the Texas Rules of Civil Procedure requires.

The judgment of the trial court should be affirmed.

**ARGUMENT**

## I. Diais Did Not Preserve Error on His Proposed Jury Questions and Instruction Because He Did Not Properly Object In the Trial Court and Obtain a Written Ruling

Diais submitted to the trial court "Plaintiffs' Request for Jury Questions and Instructions" (1 CR 49–67). At the charge conference, however, Diais did not make any objections to the jury charge and did not obtain a written ruling denying his proposed submissions (3 RR 10–11). Thus, the record does not confirm that "the trial court was aware of, and rejected" Diais' proposed jury questions. *See Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 920 (Tex. 2015); *See Cleveland Reg'l Med. Ctr., L.P. v. Celtic Properties, L.C.*, 323 S.W.3d 322, 339–41(Tex. App.—Beaumont 2010, pet. denied) (holding that plaintiff failed to preserve argument for appeal that trial court erred in failing to submit a jury question,

8

regardless of the fact that the plaintiff submitted a proposed jury question on the issue, because plaintiff did not object at the charge conference to the trial court's failure to submit the jury question).

"[T]endering a proposed jury question or instruction will not suffice to preserve error when a proper objection has not been made to the question or instruction submitted." *Cleveland Reg'l*, 323 S.W.3d at 341 (citing *Kirkpatrick v. Mem'l Hosp. of Garland*, 862 S.W.2d 762, 769 (Tex. App.—Dallas 1993, writ denied)). Because Diais' issues 1–4 are not preserved for appellate review, this Court need not reach them. Assuming *arguendo* that they are, however, none serves as a basis for reversal. The issues are addressed in turn below.

## II. The Trial Court Properly Excluded Diais' Proposed Jury Question on Fraudulent Inducement Because No Evidence Supported Its Submission

Diais argues that the trial court improperly excluded a jury question on fraudulent inducement (Brief at p. 14). The record shows, however, that the trial court properly excluded Diais' fraud claim because there is no evidence to support any of its elements.

The elements Diais had to show to support a jury question on a fraudulent inducement claim are:

1. Land Rover Dallas made a material misrepresentation;

9

2.      Land Rover Dallas knew that the misrepresentation was false when it made it or Land Rover Dallas made the misrepresentation recklessly without any knowledge of its truth and as a positive assertion;

3.      Land Rover Dallas intended that Diais act on the misrepresentation;

4.      Diais acted in reliance on the misrepresentation; and

5.      Diais suffered injury thereby.

*See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 33 (Tex. 2011). "[T]he elements of fraud must be established as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001). Taking each in turn below, it is clear that Diais has no evidence to support any, let alone *all* of these elements.

A.      *The record contains no evidence that Land Rover Dallas made a material misrepresentation that it knew to be false or with a reckless disregard for the truth*

The only alleged misrepresentations Diais identifies are the following: (1) Land Rover Dallas "represented that the Vehicle was in new condition. . . . However, the Vehicle was not in new condition" (Brief at p. 15); and (2) Land Rover Dallas "represented that the Vehicle was the most luxurious, rugged vehicle, with a supercharged, high performance engine. . . . However, the Vehicle was in reality unsafe and dangerous to drive, unable to detect whether there were engine problems, unable to go over 30 miles per hour, and had serious abnormalities that

10

should not be in a vehicle in new condition, but were of a deteriorated condition" (*Id.*).

First, Diais' theory that Land Rover Dallas misled him into believing the car was new is itself misleading. Essentially, Diais argues that because some mechanical issues with his Range Rover surfaced not long after he bought the car (all of which were covered under warranty), the car was he bought was not actually "new"; it was "of a deteriorated condition." He repeats this theme time and again in his briefing. Taking it an illogical step further, Diais argues that these unforeseen mechanical issues—all of which came to light after the sale of the vehicle—rendered Land Rover Dallas's statement that the vehicle was "new" when sold a misrepresentation.

**1. The Range Rover was in fact new when sold to Diais.**

The Texas Occupations Code defines "New Motor vehicle" as "a motor vehicle that has not been the subject of a retail sale regardless of the mileage of the vehicle." Tex. Occ. Code Ann. § 2301.002(14). The Range Rover here was new when sold to Diais.

Not surprisingly, Diais never offered evidence to the contrary. Critically, he offered no evidence to show that the Range Rover he purchased was not a "new" car under the ordinary or statutory meaning of the term; in other words, that anyone ever purchased and held title to the car before it was sold to him.

11

The unexplained string cites to the record that Diais relies on, but does not discuss, reveal upon closer inspection the misleading nature of Diais' conclusory "fraudulent misrepresentation" argument.  For example, he sets forth the following record cites to support his argument that Land Rover Dallas fraudulently misrepresented that the Range Rover he purchased was a new car when sold:

- Cited: 2 RR 131–33. What the record says:

  o Diais testifies that he thought the vehicle was new, but he started having problems with it the third day he owned it. He notes that the vehicle would hesitate before starting, would not exceed speeds of thirty miles per hour, and the engine "made a very loud noise."

- Cited: 2 RR 178.  What the record says:

  o Diais testifies that the Range Rover "was a deteriorated vehicle" because "[w]ithin three weeks it needed a new engine."

- Cited: 3 RR 25.  What the record says:

  o Michael McGovern, Sales Guide at Land Rover Dallas, testifies that on the day the Diaises came to the dealership, he showed them only new vehicles, and represented to them that the Range Rover they purchased was new.

12

None of the "evidence" Diais sets forth to support his misrepresentation claim is actually evidence that (1) the Range Rover was *not* new when sold, and/or (2) that Land Rover Dallas knew the Range Rover was not new or not "in new condition" when it sold the vehicle to Diais. In fact, the only testimony given at trial regarding whether the vehicle was actually "new" (in the ordinary sense of the word) when Land Rover Dallas sold it indisputably shows that neither Land Rover Dallas (nor any other dealership) had sold the Range Rover to anyone else before they sold it to the Diaises (2 RR 237). Moreover, the jury heard testimony from Diais' deposition wherein he concedes that the statement was "not necessarily false. It was a brand new vehicle . . ." (2 CR 164). He clarifies what he meant by "deteriorated": I mean, it just did not operate the way it was supposed to have" (2 RR 164). But even "new" vehicles can develop mechanical issues. Not only does the record show a lack of evidence to support Diais' allegation that Land Rover Dallas made a misrepresentation concerning the newness of the Range Rover, the evidence in the record conclusively proves that the vehicle Diais purchased was actually new. Thus, Land Rover Dallas's statements to Diais that the vehicle was new are not, as a matter of law, misrepresentations of fact.

**2. The record contains no evidence that Land Rover Dallas made misrepresentations it knew to be false or with reckless disregard for the truth.**

Furthermore, no evidence supports Diais' argument that because the Range Rover experienced mechanical problems three days after purchase, Land Rover Dallas *knew* or had any reason to know that the vehicle had any sort of mechanical issues at the time of sale. At trial, Michael McGovern testified that he drove the vehicle over 300 miles from Dallas to Odessa to personally deliver it to the Diaises (2 RR 21). McGovern testified that the car "[d]rove great," was "comfortable," and that he had "no issues" on the drive (3 RR 21–22). And Diais himself drove the Range Rover approximately 800 miles—including a trip from Odessa to Lubbock—before experiencing engine problems (2 RR 164–65).

Throughout his brief, Diais surmises that because Land Rover Dallas "would have had all the information about the vehicle prior to selling the Vehicle through inspections, reports, documentation, service history," then Land Rover Dallas must have somehow known *at the time of sale* that mechanical issues would manifest in the near future and sold the vehicle as "new" despite this knowledge (Brief at p. 16). Diais' mere suspicion is not evidence. A seller "has no duty to disclose facts he does not know." *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995).

14

Finally, Land Rover Dallas's alleged statements that the Range Rover was "the most luxurious, rugged vehicle, with a supercharged, high performance engine" are simply not actionable statements. They are examples of "dealer's talk," "puffing," or opinion; they are not misrepresentations of material fact that can constitute fraud. *Prudential Ins. Co. of Am.*, 896 S.W.2d at 163 (holding that statements that a building was "superb," "superfine," and "one of the finest little properties in the City of Austin" were not actionable as mispresentations); *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 463–64 (Tex. App.—Dallas 1991, pet. denied) (holding that automobile salesman's statements that car was best engineered in the world, probably would not have mechanical difficulties and probably would only need servicing for oil changes were puffing or opinion, and not actionable statements).

Because these statements turn on vague and essentially undefinable terms, and are expressions of opinion, they are too vague to be actionable. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276–77 (Tex. 1995); *see Autohaus*, 794 S.W.2d at 464 ("Generally, statements that compare one product to another and claim superiority are not actionable misrepresentations."). Indeed, Diais himself testified during trial that he wanted a Range Rover because "[i]t's a luxurious vehicle," and it is "rugged," especially on curved roads (2 RR 120). Because Diais

15

has no evidence that Land Rover Dallas made material, false representations of *fact*, the trial court properly refused his fraudulent inducement question.

>    B.    *The record contains no evidence of Land Rover Dallas's alleged fraudulent intent.*

Even assuming *arguendo* that Land Rover Dallas made an actionable misrepresentation, the trial court nonetheless properly refused a jury question on fraud because Diais has shown no evidence that Land Rover Dallas intended to deceive him.[7] *Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 811–12 (Tex. App.—Dallas 2009, no pet.); *see Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex. 1998). After selling the vehicle to Diais, Land Rover Dallas had a salesman drive the vehicle 350 miles to personally deliver it to Diais (2 RR 124–25). Later, when the vehicle's engine developed problems, Land Rover Dallas had it returned to the dealership via flat-bed truck, at no expense to Diais, for repairs made under warranty (2 RR 133). Yet Diais

---

[7] Diais argues without much elaboration that he can recover rescission damages without proving that Land Rover Dallas's alleged misrepresentations were material or its misrepresentations were made with the intent to deceive (*See* Brief at p. 16). Diais' claim for rescission, however, is barred. Rescission is a common law contractual remedy. Yet when, as here, the contract in dispute is for the sale of goods, the Uniform Commercial Code (UCC) controls. *See* Tex. Bus. & Comm. Code § 2.102; *see also SelecTouch Corp. v. Perfect Starch, Inc.*, 111 S.W.3d 830, 834 (Tex. App.—Dallas 2003, no pet.) ("Contracts relating to the sale of goods are governed by article two of the Uniform Commercial Code (UCC), adopted in Texas as chapter two of the business and commerce code."); *Aquila Sw. Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 236 (Tex. App.—San Antonio 2001, pet. denied) ("Where the UCC applies, common-law rules of law regarding breach of contract do not apply."). Unlike the common law, Article 2 of the UCC does not contain an equitable right to rescission. *See Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 695 (Tex. App.—Austin 1989, no writ.) (outlining the remedies available to a buyer under the UCC).

contends that Land Rover Dallas knew all along that the vehicle would develop an engine issue when they sold it. Diais has no evidence to support this far-fetched theory.

Diais points out that knowledge of falsity can be proved with circumstantial evidence," but he never details for this Court any circumstantial evidence showing that Land Rover Dallas allegedly knew the vehicle "was of deteriorated condition" and chose to intentionally deceive the Diaises into buying it anyway. As set forth above, Diais instead relies on conclusory allegations followed by a host of unexplained string cites to the record. *See* Brief at p. 16–17. This Court should decline Diais' invitation to go hunting through the record to find the so-called "evidence" he never clearly sets forth. Conclusory statements such as "the misrepresentation was made with the intention that it should be acted on by the other party" and "the representation was made to induce the purchaser," without more, are not evidence of fraudulent intent.

C.     *The record contains no evidence that Diais relied on any alleged misrepresentation in connection with the sale of the Range Rover*

If it were not already apparent that Diais' fraud claim is not viable, his lack of evidence on the element of reliance should make it clear that the trial court did not err in refusing to submit the question to the jury. To prevail on a fraud claim, plaintiff must show actual and justifiable reliance. See *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). In determining

whether reliance is justifiable, the court considers whether, "given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud it is extremely unlikely that there is actual reliance on the plaintiff's part." *Id.*

### 1. The "As-Is" Clause in the Contract Defeats the Element of Reliance and Causation

As a matter of law, the "as-is" clause contained in the Agreement between Diais and Land Rover Dallas negates the element of reliance and causation in Diais' misrepresentation claim.[8] *See Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995) ("[Plaintiff's] 'as is' agreement negates his claim that any action by [defendant] caused his injury."); *see also Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 913 (Tex. 2007) ("[A]n 'as is' agreement precludes the lessee from proving that the lessor's conduct caused harm."); *Welwood v. Cypress Creek Estates, Inc.*, 205 S.W.3d 722, 726 (Tex.App.—Dallas 2006, no pet.) ("In general, a valid 'as is' agreement negates the element of causation necessary to recover on claims regarding the physical condition of the property."); *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 253 (Tex.App.—Waco 2001, pet. denied) (holding that "as is" clause

---

[8] It should be noted that Land Rover Dallas did not manufacture or design the vehicle, as is typically the case with any dealership. Instead of providing their own warranty, dealerships such as Land Rover Dallas sell the vehicle "as is" along with the manufacturer's warranty, as was the case here. It should also be noted that Diais did not sue the manufacturer of his Range Rover.

18

in earnest money contract conclusively negated causation and reliance elements of plaintiff's fraud, negligence and DTPA claims).

"The Texas Supreme Court has held that, generally, an 'as is' clause will defeat the element of causation in DTPA, fraud, and negligence claims." *Bynum v. Prudential Residential Services, Ltd. Partnership*, 129 S.W.3d 781, 788 (Tex. App.—Houston [1st Dist.] 2004, pet. denied), *citing Prudential*, 896 S.W.2d at 161. To be sure, this holding has been reaffirmed by the Texas Supreme Court:

> By agreeing to lease the property "as is," a lessee agrees to make his own appraisal of the bargain and accepts the risk that he may misjudge its value. The lessor gives no assurances, express or implied, concerning value or condition of the premises. Thus, an "as is" agreement precludes the lessee from proving that the lessor's conduct caused harm.

*Snider*, 220 S.W.3d at 914.

The reasoning set forth in *Prudential* and *Snider* applies here. The sale of the Range Rover was not a "take it or leave it" transaction. Diais was under no compulsion or in any way forced to buy this luxury sport utility vehicle. He clearly signed the contract, (1 CR 107),[9] and agreed to purchase the vehicle from Land Rover Dallas "as is," with any warranty on the vehicle coming from the manufacturer. (*Id.*) As did the plaintiffs in *Prudential* and *Snider*, Diais agreed, with respect to Land Rover Dallas, to "make his own appraisal of the bargain and

---

[9] (4 RR __; P's Ex. 1).

19

accept the risk that he may misjudge its value." *Snider*, 220 S.W.3d at 914. Ultimately, Diais' agreement to purchase his Range Rover "as is" from Land Rover Dallas negates his ability to prove reliance or causation as part of his negligent misrepresentation or fraud claims.

**2.      Diais Admits That He Did Not Reply on Any Representations In Connection With the Sale of the Vehicle.**

Diais has admitted that before he and his wife travelled from Odessa to Land Rover Dallas he had already decided to purchase a Range Rover (2 RR 119–22). Diais also testified that he had no communication with Land Rover Dallas before he traveled from Odessa to Dallas to purchase the Range Rover (*Id.*). He and Mrs. Diais decided—strictly on their own accord—to fly to Dallas, purchase a white Range Rover from the Land Rover Dallas, and drive it back home (2 RR 153–54). The Diaises did not even test drive the Range Rover that they purchased:

14

Q. So – and correct me if I'm wrong, but along about the time *before* y'all purchased this, your wife said, "I'd like to get a new Range Rover"?

A. Correct.

Q. Okay. Any other decision – or any other factors that factored into it other than this is what my wife wants?

A. She thought it was the best vehicle on the market and that's what she wanted.

(4 Supp. CR ___ (emphasis added)).

18

Q. Was there any consideration by you or your wife of any other kind of luxury SUV?

A. No. She was set on that.

19

Q. Was there a plan to go to any other Range Rover dealerships?

A. There aren't any that I know of.

Q. Well, I was going to ask you about the one in Austin, but – are you familiar with the one in Austin dealership?

A. No.

Q. No? So just so I can close the loop on that, so there was no plan other than – there was no plan to go to any other dealership in Texas that sold Land Rovers other than the one in Dallas?

A. That is correct. We were set on buying one

21

from Dallas.

(*Id.* at 18–19).

Diais' own testimony shows that neither he nor his wife justifiably relied on any statement made by Land Rover Dallas. Nothing in the record supports Diais' contention that he was somehow deceived or induced to purchase the vehicle. Thus, Diais could not have prevailed on his fraudulent inducement claim even if he were able to establish the other required elements.

> **D.** *The record contains no evidence that Diais was damaged as a result of any alleged misrepresentations in connection with the sale.*

Even assuming that Diais could meet his burden to show all other elements of his fraudulent inducement claim—which he cannot—his claim would still fail because he has suffered no damages. Diais' vehicle was repaired, under warranty and free of charge, in accordance with the terms of the parties' Agreement and the manufacturer's warranty (1 CR 107).

Furthermore, Diais presented no evidence at trial that there was any difference in the value of the vehicle as Land Rover Dallas represented it to Diais and as the vehicle was sold to him (2 RR 232). And Diais has presented no evidence to show that the mere fact that the vehicle required a warranty repair reduced its value. At bottom, there is no difference in value between Diais' vehicle, which required a warranty replacement of the engine, and a new vehicle

that did not.  For these reasons, among the others outlined above, the trial judge properly refused to submit to the jury Diais' fraudulent inducement question.

## III. The Trial Court Properly Excluded Diais' Negligent Misrepresentation Claim Because It Is Barred by the Economic Loss Rule and No Evidence Supports Its Submission

### A. *The Economic Loss Rule Prevents Diais from Recovering in Tort for What Is a Contract Claim*

The economic loss rule "generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014); *see LAN/STV v. Martin K. Eby Constr. Co., Inc.*, 435 S.W.3d 234, 238 (Tex. 2014); *Midcontinent Aircraft Corp. v. Curry County Spraying Serv., Inc.*, 572 S.W.2d 308 (Tex. 1978).  "[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Gross v. WB Texas Resort Communities*, No. 02-12-00411, 2014 WL 7334950, at *7 (Tex. App.—Fort Worth Dec. 23, 2014, no pet.).

Here, Diais' alleged injury is only the economic loss to the subject of the contract itself—the purchase price of the Range Rover.  Even assuming for purposes of argument that Land Rover Dallas made promises or representations concerning the vehicle that Diais relied on, those representations could serve only

23

as a breach of contract claim when the vehicle encountered an engine issue. *See Sw. Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991) (applying the economic loss rule to bar actions for negligence); *Murray v. Ford Motor Co.*, 97 S.W.3d 888, 890–93 (Tex. App.—Dallas 2003, no pet.) (applying the economic loss rule to prohibit recovery in tort for damage to a burned vehicle); *Brewer v. Gen. Motors Corp.*, 926 S.W.2d 774, 780 (Tex. App.—Texarkana 1996, no writ) ("We agree that, under Texas law, Plaintiffs cannot recover purely economic losses to their products based either on strict liability or negligence."); *see also Am. Eagle Ins. Co. v. United Techs. Corp.*, 48 F.3d 142, 144 (5th Cir. 1995) (same). Thus, this lawsuit sounds in contract alone, and the economic loss rule prevents Diais from recovering for tort damages by way of a negligent misrepresentation claim. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). The trial court therefore properly excluded Diais' theory of negligent misrepresentation from the jury charge.

### B. *No Legally Sufficient Evidence Supported the Claim*

The economic loss rule aside, Diais' negligent misrepresentation claim was not viable because he has no evidence to support it. The elements Diais was required to show to support a jury question on negligent misrepresentation are:

1. Land Rover Dallas made a representation in the course of its business, or in a transaction in which he has a pecuniary interest;

2.      Land Rover Dallas supplied "false information" for the guidance of others in its business;

3.      Land Rover Dallas did not exercise reasonable care or competence in obtaining or communicating the information; and

4.      Diais suffered pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (adopting Restatement (Second) of Torts § 552); *see McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

### 1.      Diais did not justifiably rely on any statements allegedly made by Land Rover Dallas.

As discussed above in Section II.C.1 and II.C.2, Diais' negligent misrepresentation claim fails because, as a matter of law, he cannot establish the reliance or causation elements of the claim. First, the "as-is" clause in the parties' contract defeats the elements of reliance and causation under the Texas Supreme Court's decision in *Prudential Insurance Co. of America v. Jefferson Assocs., Ltd.*, 896 S.W.2d at 161, and its progeny. Second, the Diaises—by their own admissions—did not rely on any alleged misrepresentation in connection with the sale of the Range Rover (2 RR 119–22, 2 RR 153–54). Diais and his wife both testified that they had decided that they wanted to purchase a new, white Range Rover before they ever engaged in communications with Range Rover, saw any

25

advertisements for Land Rover Dallas, or stepped foot into the dealership (2 RR 153–54). Thus, for the same reasons Diais cannot establish the elements of reliance or causation for his fraud claim, he likewise cannot establish the reliance or causation elements of his negligent misrepresentation claim.

### 2. No evidence supports the element of damages in Diais' negligent misrepresentation claim.

Just as Diais' negligent fraudulent inducement claim fails because, among other reasons, he has no proof that he suffered damages, so too does his negligent misrepresentation claim (*See* Discussion at *supra* section II.D.). When Diais' vehicle developed engine problems, Land Rover Dallas towed the vehicle back to the dealership at its own expense and repaired his vehicle free of charge, under warranty (2 RR 137). The only damages Diais suffered were caused by his own refusal to pick up his vehicle for two years after repairs were complete.

## IV. The Trial Court Properly Excluded Jury Questions Relating to the Enforceability of the As-Is Clause

Diais argues that the trial court improperly excluded questions 18 through 21 of his proposed jury charge, which he argues were modeled to address the elements required to invalidate an "as-is" clause as set forth in *Prudential Insurance Company of America v. Jefferson Associates*, 896 S.W.2d 156, 162 (Tex. 1995). This argument is untenable for several reasons.

26

First, Diais did not properly preserve this argument for appeal. Although the proposed jury charge he submitted to the trial court contains proposed questions 18–20, it is not at all clear that these questions pertain to the invalidation of an "as-is" clause:

**Question No. 18.**

> Did SHIHAB DIAIS and ODESSA DENTAL SOLUTIONS, P.A. enter into a service contract with LAND ROVER DALLAS, L.P. within 90 days of purchasing the vehicle from LAND ROVER DALLAS, L.P.?
>
> Answer Yes or No
>
> Answer _____

**Question No. 19.**

> Did LAND ROVER DALLAS, L.P. obstruct SHIHAB DIAIS and ODESSA DENTAL SOLUTIONS, P.A.'s ability to inspect for defects of the vehicle?
>
> Answer Yes or No
>
> Answer _____

**Question No. 20.**

> Were the first three sentences of the paragraph entitled "Warranty Statement" of the Motor Vehicle Buyer's Order an incidental or boilerplate provision rather than an important basis for the bargain?
>
> Answer Yes or No
>
> Answer: _____

**Question No. 21.**

>Did SHIHAB DIAIS and ODESSA DENTAL SOLUTIONS, P.A. have less bargaining power than LAND ROVER DALLAS, L.P. regarding the paragraph entitled "Warranty Statement" of the Sale Contract and Finance Agreement?
>
>Answer Yes or No
>
>Answer: _____

At the formal jury charge conference, counsel for Diais did not mention these proposed questions and did not argue to the trial judge that these questions should be submitted as a basis for invalidating the "as is" clause in the Agreement (3 RR 10–12). *See Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 920 (Tex. 2015). Because the issue is not preserved for review, as discussed in above, this Court need not reach it.

In any event, whether the as-is clause in the Agreement was valid is a not a question for the jury. In *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995), the Texas Supreme Court mandated that *courts* must assess the validity of an "as is" agreement in light of three factors: (1) the sophistication of the parties; (2) the terms of the "as is" agreement; (3) "whether there was a knowing misrepresentation or concealment of a known fact." Thus, it was up to Judge Moyé to determine as a matter of law whether the as-is clause negates the reliance element of Diais' negligent misrepresentation claim. *Id.*

28

(concluding that a contract's "as-is" clause negated the producing cause element of plaintiff's DTPA claim). His refusal to put the legal question of the clause's validity to the jury was not error. *See. Pipe Line Co., Inc. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999) (explaining that a jury question is immaterial and should not be submitted to the jury if it calls for a finding beyond the province of the jury, such as a question of law); *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 156 (Tex. 1994) (same).

Even if it were preserved, however, the Court should reject Diais' argument because the refusal was harmless. *See* Tex. R. App. P. 61.1; *Tex. Dept. of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000) ("[A] successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted"). At no time did Land Rover Dallas argue the as-is clause to the jury as a basis for the jury finding that Land Rover Dallas did not breach the Agreement. Although Diais argues after-the-fact, to this Court, that "the Jury could have impermissibly relied upon the 'AS IS' language contrary to the law," Diais did not argue during trial that the "as is" clause is unenforceable[10] (*See* Brief at p. 30). Because Land Rover Dallas did not rely on the "as is clause" before the jury, there was no harm in excluding the question.

---

[10] Diais argues that the clause is unenforceable because he was fraudulently induced to sign the Agreement. For the reasons explained in this brief under Section II, *supra*, Diais has no proof to

## V. The Trial Court Properly Declined to Submit a Jury Question on Unconscionable Conduct

The DTPA defines "unconscionable action or course of action" as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Comm. Code § 17.45(5). Construing the term "grossly," the Texas Supreme Court has explained that proving DTPA unconscionability "requires a showing that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998); *Chastain v. Koonce*, 700 S.W.2d 579, 583–84 (Tex. 1985). Whether this objective standard is met involves an examination of the entire transaction. *Id.*

Diais' claim of unconscionable conduct is based upon alleged misrepresentations that (1) the Vehicle was in new condition,[11] and (2) "the Vehicle was the most luxurious, rugged vehicle, with a supercharged, high performance engine" (Brief at p. 26). As previously discussed, these representations were either true or not actionable. But even assuming they were misrepresentations, they constitute no evidence that Land Rover Dallas took advantage of his "lack of knowledge, ability, or capacity to a *grossly* unfair

---

support any of the elements of his fraudulent inducement claim. Thus, fraudulent inducement does not constitute a basis for invalidating the as-is clause in the agreement.

[11] As discussed in section II. A.1, the evidence is undisputed that the Range Rover sold to Diais was a "new motor vehicle" as described by section 23.01.002(24) of the Texas Occupations Code.

degree" and that this conduct was a producing cause of Diais' damages.  *See*

*Chastain v. Koonce*, 700 S.W.2d 579, 581 (Tex. 1985) (emphasis added).

By his own admission, Diais is an educated, sophisticated businessman (2 RR 149).  He is a licensed dentist who owns a medical practice (1 RR 118, 149–50).  He also has an Executive Master Degree in Business Administration from Texas Tech University (2 RR 149).  Diais testified that he has purchased "lots of new vehicles in the past," including a Range Rover (2 RR 121, 149–151).  Diais also testified that he has experience in negotiating—"[t]here's no question about that" (2 RR 150).

In light of this testimony, it is clear that Diais has not put forth any evidence that Land Rover Dallas took advantage of him at all during the negotiations for his purchase of a Range Rover, let alone that Land Rover Dallas too advantage of him "to a grossly unfair degree."   The "glaringly noticeable, flagrant, complete and unmitigated" unfairness required to support a DTPA claim for unconscionable action simply did not take place during Diais' purchase of the Range Rover.  The trial court thus properly declined to submit  Diais' DTPA unconscionable conduct claim.

Finally, Diais' argument that Land Rover Dallas "failed to disclose material facts about the Vehicle within their knowledge" is, again, misleading.[12]  Although Land Rover Dallas did not call the Diaises to tell them about everything they found wrong with the car before making warranty repairs, such information was disclosed in the repair order Diais was to receive when he picked up the vehicle form the dealership, which he refused to do (2 CR 150–53).

## VI.  The Trial Court Properly Excluded the Carfax Report (Diais' Exhibit No. 13).

At trial, Wayne Cloud of Land Rover Dallas testified that the body damage the Range Rover sustained while in the Diaises' possession negatively affected its value because it would eventually be reflected in the vehicle's crash history report, such as that generated by the website Carfax.com (2 RR 234).  Diais attempted to admit into evidence the actual Carfax report associated with the Range Rover Diais purchase, apparently in an effort to show that no such information was on the Carfax report by the time of trial.  The proffered exhibit was a single-page printout from the Internet with no supporting affidavit (2 RR 234–25).  Upon objection, the trial court excluded this evidence on grounds of hearsay and because the document was not properly authenticated (*Id.*).  Land Rover Dallas argued, and the trial court

---

[12] Diais alleges that the "Service Manager testified how Defendants failed to disclose material facts about the Vehicle" and then cites to the record without further explanation.  But Diais' own self-serving testimony, which he includes in the string cite, is no evidence to support this allegation.

agreed, that the document was not properly authenticated because Diais simply printed it off of a website with no supporting proof that it was what Diais purported it to be. *See Tienda v. State*, 358 S.W.3d 633, 644–46 (Tex. Crim. App. 2012) (holding that a party must present sufficient circumstantial evidence to support a finding that webpages are "what they [are] purported to be.").[13] Diais did not make an order of proof to admit the Carfax into evidence.[14] This Court should therefore not consider it. *See* Tex. R. Evid. 103(a)(2).

The trial court's evidentiary ruling was proper and Diais' appellate brief does not address or attempt to refute the actual legal arguments on which the evidence was excluded. Accordingly, Diais has waived any error by failing to adequately brief this issue. *See* Tex. R. App. P. 38.1(i) (requiring that the argument section of a brief include clear and concise argument with appropriate citations to authorities).

Regardless, the ruling cannot constitute reversible error for several reasons (*See* Brief at pp. 32–33). First, Diais' argument that the manager of Land Rover Dallas gave "extensive testimony" that was "patently false" and contrary to the actual content of the Carfax reports is incorrect and misleading. The record shows

---

[13] In *Tienda*, for example, the Texas Court of Criminal Appeals concluded that a proponent properly authenticated a printout of a social media page by producing affidavits and an "official MySpace Subscriber Report" evidencing that the appellant was actually responsible for the posts. *Tienda*, 358 S.W.3d at 644–46.

[14] Even though Diais did not make an offer of proof, the Court Reporter nevertheless included the Carfax in the record.

33

otherwise. Wayne Cloud did not testify that the Carfax itself for this vehicle contained negative information concerning past damage claims. Rather, he testified that information regarding the vehicle's history of body damage will, *in time*, often make it into a Carfax report and become available to subsequent purchasers of that vehicle. Cloud testified that the history of body damage would greatly decrease the vehicle's value upon resale:

> Wayne Cloud: I mean, any damage, cosmetic or physical, to the car. There are reports out on any site that you can go to, the most popular one's CARFAX and Auto Check. Any anytime anything's repaired in a body shop or any type of cosmetic repair, it will show up on a CARFAX. And I think that was even mentioned earlier when we were in here. But those –
>
> Q. Did you – Go ahead.
>
> Wayne Cloud: Those reports, those companies get their information from other companies, but it doesn't have to have – And really the bad part about it, is *it doesn't show up instantly. It could take years, or 18 months, two years, whatever it is, for that information to show up*.

(2 RR 234) (emphasis added).

After Cloud gave this testimony, Diais' counsel cross examined him at length (2 RR 238–49). Counsel was free to cross examine Cloud about the Carfax specifically and ask him what was or was not in the report for this particular vehicle. Counsel chose not to do so, and should not be heard to complain now that the jury was misled.

34

In any event, the evidentiary ruling cannot possibly be prejudicial because it was cumulative of other evidence. Carfax report aside, Cloud's extensive testimony established that the damage done to the body of the car while it was in the Diaises' possession decreased its value significantly enough to prevent Diais from being able to benefit from a collateral swap or trade-in for another new Range Rover (2 RR 227–55). And the jury saw photographic evidence of the damage to the Range Rover (5 RR __; D's Ex. 17 (A–F))). The ruling was therefore not harmful in light of the other evidence presented to the jury on the issue of the vehicle's body damage. *See Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 474 (Tex. 1998) (holding that an evidentiary ruling was not harmful because in light of other testimony and similar evidence, the excluded evidence would have been cumulative); *see also* Tex. R. App. P. 44.1(a)(1). The harmless evidentiary ruling is certainly no basis for reversal.

## VII. Diais Was Not Entitled to a New Trial Based on His Alleged Discovery of New Evidence

Diais argued unsuccessfully in the trial court, as he does here, that because he purportedly has "newly discovered evidence," he is entitled to a new trial (Brief at 34–39). This argument lacks merit and, in any case, is waived.

*A.* *Diais Did Not Properly Present His Newly-Discovered Evidence Argument to the Trial Court; It Is Therefore Waived*

Following the denial of his Motion for Judgment Notwithstanding the Verdict, Diais filed a Motion for New Trial and a Supplement to the Motion for New Trial (1 CR 97–106; 144–47). His motion was never set for a hearing and was denied by operation of law.

Under Texas Rule of Appellate Procedure 33.1(b) and Texas Rule of Civil Procedure 324, Diais waved his argument that he was entitled to a new trial based on the discovery of new evidence because no evidentiary hearing was held in the trial court. TRAP 33.1(b) provides as follows:

> **(b)** ***Ruling by operation of law.*** In a civil case, the overruling by operation of law of a motion for new trial or a motion to modify the judgment preserves for appellate review a complaint properly made in the motion, *unless taking evidence was necessary to properly present the complaint in the trial court.*

(emphasis added). Texas Rule of Civil Procedure 324 provides as follows:

> **PREREQUISITES OF APPEAL**
>
> (b) **Motion for New Trial Required**. A point in a motion for new trial is a prerequisite to the following complaints on appeal:
>
> (1) A complaint on which evidence must be heard such as . . . newly discovered evidence . . . .

Taken together, these two rules establish that when a movant argues as the basis for a new trial the discovery of new evidence, the movant must ensure that the trial

36

court holds an evidentiary proceeding on the motion. Because the failure to do so results in the movant's failure to preserve the issue for appellate review, this Court cannot reach Diais' argument is that he is entitled to a new trial.

> **B.** *The Evidence Is Not New; It Is Based on Information Known to Diais In Advance of Trial*

Even if Diais' argument was preserved and this Court considers it, it will not carry the day. This so-called "new" evidence is, in reality, just newly created expert affidavits Diais obtained after he lost at trial. Diais and his attorneys never inspected the Range Rover in the entire two-year period prior to trial. The final, take-nothing judgment in this case was signed on October 29, 2014 (1 CR 95). That same day, Diais had an expert, Nathan Villarreal, "inspect the blemishes on the vehicle." Villarreal concluded that the blemishes on the body of the Range Rover were not caused by the Diaises, but were caused by a defective paint job (Brief at p. 35).

In December 2014, some two months after the trial, Diais took the vehicle to Range Rover San Antonio (Brief at p. 37–38). According to the Affidavit of Paul Sharp (attached to Diais' supplement to his Motion for New Trial), Range Rover San Antonio allegedly told Diais that the after-market wheels Land Rover Dallas installed on the vehicle did not fit properly, causing damage to the vehicle that would require $4,000 to repair (Brief at p. 38); (1 CR 144–46). Diais also states that Range Rover San Antonio discovered that the engine was not properly

replaced by Land Rover Dallas, and that this repair would cost another $1,100 (*Id.*). All of this information, which Diais alleges was known to him only after trial, purportedly entitles him to a new trial. This argument must be rejected.

Whether a motion or new trial on grounds of newly discovered evidence will be granted is a matter generally left to the trial court's sound discretion, and the ruling will not be disturbed absent an abuse of discretion. *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 844 (Tex. App.—Dallas, no pet.). "On review, every reasonable presumption will be made in favor of orders of the trial judge refusing new trials." *Id.* (citing *Jackson v. Van Winkle*, 660 S.W.2d 807, 809–10 (Tex. 1985)); *see In re S.M.V.*, 287 S.W.3d 435, 451 (Tex. App.—Dallas 2009, no pet.).

To obtain a new trial based on this alleged newly discovered evidence, Diais must show each of the following elements by affidavit:

1. He has admissible, relevant evidence introduced on the hearing for new trial demonstrating the existence of newly discovered evidence relied upon;

2. He had no knowledge of such evidence until after the conclusion of the trial and that such evidence could not have been discovered prior to the trial with the exercise of due diligence;

3. Such evidence was not cumulative or to be used for impeachment; and

4. Such evidence would probably produce a different result if a new trial was granted.

*Rivera*, 262 S.W.3d at 844; *see In re Thoma*, 873 S.W.2d 477, 512 (Tex. 1994).

38

First, Diais cannot show that any of this evidence is actually new. Before Diais purchased the vehicle, and long before trial, Diais knew the vehicle had undergone an expensive body kit customization, that it had paint blemishes on it, and that Land Rover Dallas would touch up the paint prior to delivery. The salesman for Land Rover Dallas, Mike McGovern, explained this several times in his deposition:

19

Q. Let's talk about the specific Range Rover that the Diaises purchased. Were there modifications done to that vehicle?

A. Yes.

Q. Who did those modifications?

A. Land Rover Dallas.

Q. What were those modifications?

A. We put different custom wheels on the car and the body kit.

Q. And when you were talking with the Diaises, did you discuss those modifications?

A. Yes.

* * *

39

25

Q. Do you know how much those modifications cost?

A. Total over the original list price for the vehicle?

26

Q. Exactly.

A. Not exactly. I would estimate, rough estimate, maybe $30,000, approximately. I'd have to look at the original cost for labor and install. I know that body kit, there was a lot of labor to put that body kit together. The wheels were custom for that body kit so that everything lined up correctly and looked good.

* * *

15

Q. Did you hear [sic] any issues about the car that was sold to the Diaises?

A. Mechanically, no.

Q. What do you mean by "mechanically, no"?

A. When we were looking at the vehicle when the Diaises decided on this particular vehicle, that they

wanted to purchase this one, because of the custom body kit that was on the vehicle there were some paint blemishes in the body kit itself. And so we discussed that we didn't want the car to leave without those

16

blemishes being taken care of.

* * *

Q. Did you have any knowledge of any issues at all regarding the vehicle?

A. Regarding the engine, no. Again, the blemishes

31

on the body kit were discussed with the customer, which is why they did not take delivery that day.

(*See* 4 Supp. CR ___).

This testimony makes clear that Diais and his lawyers knew, long before trial, that the vehicle had undergone a body customization, had paint blemishes, and that prior to delivery would be repainted. This fact was never in dispute until now, when Diais wants to argue that this information is new. As Diais himself explained in his deposition:

Q. How long approximately were you and your wife

there at the dealership?

A. Approximately three hours.

Q. And you said there was -- the original plan was to -- to drive it back?

A. That is correct.

Q. Okay. And did that happen?

A. No.

Q. Why not?

A. It needed some touchups, they told me.

Q. And do you know what they were going to do to make it ready?

A. They said they needed some paint touchups and

29

other things. I don't know what, but -- but they said

They will be happy to deliver it.

(4 Supp. CR __). Given this deposition testimony, neither Diais nor his lawyers can now claim they have "newly discovered" evidence regarding the condition of the paint on the vehicle. This information has been known to them for a long time.

The same is true with regard to Diais' "newly discovered evidence" about the size of the tires/wheels and Land Rover Dallas's allegedly improper engine

42

repair. None of this information is "new" to Diais either. The same tires and wheels that were on the vehicle when Diais purchased it were the same ones on the vehicle when Diais abandoned the vehicle at the dealership after the engine was replaced. They are the same tires and wheels that were on the vehicle while it languished in the Land Rover Dallas parking lot, unclaimed or inspected by Diais, for the two years leading up to trial. The work Land Rover Dallas had undertaken to replace the engine did not change; the wheels and tires did not change. Any issue Diais claims now concerning the work done to the engine could have therefore been discovered and claimed years ago, *before trial*.

Interestingly, Diais *did* originally argue that Land Rover Dallas did not make repairs to the Range Rover properly. (*See* 4 Supp. CR __). For some unknown reason, however, Diais then chose not to inspect the engine replacement work prior to, or even during, this lawsuit. Diais' argument to the trial court in his Motion for New Trial that the engine replacement was not done properly was therefore not actually "new evidence."

C.    *Diais Cannot Show That the Late Discovery of This Evidence Was Not Due To His Lack of Diligence*

The burden is on Diais to show, not only that the evidence is new, but that he exercised the required diligence in procuring this evidence. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). "The due diligence requirement has not been met if the same diligence used to obtain the evidence

43

after trial would have had the same result if exercised before trial." *Neyland v. Raymond*, 324 S.W.3d 646, 656 (Tex. App.—Fort Worth 2010, no pet.). Here, as discussed above, Diais was indisputably aware of this so-called "newly discovered" information in advance of trial and, through the exercise of due diligence, Diais could have hired Nathan Villarreal or Paul Sharp to examine the vehicle at any time before or during the lawsuit and trial. His failure to do so negates the due diligence element of his burden, and his argument that he was entitled to a new trial fails. *See Rivera*, 262 S.W.3d at 844–45 (affirming trial court's order refusing new trial because movants "knew the existence of evidence material to their case," but did not compel the attendance of necessary witnesses or take their depositions, evidencing a lack of diligence precluding the grant of a new trial); *see Nixon v. GMAC Mortg. Corp.*, No. 05-08-00256-CV, 2009 WL 2973660, at *3–4 (Tex. App.—Dallas Sept. 18, 2009, no pet.) (rejecting argument that newly discovered evidence warranted new trial because, among other things, movant "offered no evidence regarding why, using due diligence, he could not have discovered [the evidence] prior to trial.").

Diais knew long before trial that the vehicle had paint blemishes before being sold, that the custom body kit included aftermarket tires/wheels that were added before the vehicle was sold, that the body of the vehicle was found to be damaged upon its return to the dealership, and that the engine had been replaced (4

44

Supp. CR __). Yet Diais showed no diligence in gathering any physical evidence on these issues. Soon after the engine was replaced, when Land Rover Dallas contacted Diais about repairing the vehicle's body damage, he bluntly responded "[t]his is no longer my vehicle" and that it now "belongs to your dealership" (2 RR 170–74). Diais' refusal to even acknowledge ownership of the vehicle—except when depreciating it on their federal income tax returns—continued throughout the case (3 RR 9).

Diais' refusal to inspect or even look at the vehicle for two years shows a lack of diligence that is fatal to Diais' argument that he is entitled to a new trial based on "new" evidence that was there all along. *See e.g., Jackson v. Van Winkle*, 660 S.W.2d at 809 (court explained that failure to explain why lawyer did not earlier obtain evidence, which was available and existed prior to trial, showed a lack of diligence for purposes of motion for new trial); *Patriacca v. Frost*, 98 S.W.3d 303, 307 (Tex. App. – Houston [1st Dist.] 2003, no pet.) (holding that an expert affidavit that could have been obtained during trial, but was not, did not constitute newly discovered evidence); *Herrera v. Seton Nw. Hosp*., 212 S.W.3d 452, 462–63 (Tex. App.—Austin 2006, no pet.) (holding that the affidavit

regarding the manner of serving an expert report could have been presented earlier and was therefore not "newly discovered" evidence for purposes of a new trial).[15]

### D.    Diais' "Newly Discovered" Evidence Is Not Material

A party seeking a new trial on grounds of newly discovered evidence must demonstrate that "the evidence is so material it would probably produce a different result if a new trial were granted."  *Waffle House*, 313 S.W.3d at 813.  In other words, Diais must show that the evidence would have made a difference. *See id.*; *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983), *overruled on other grounds by Mortiz v. Preiss*, 121 S.W.3d 715 (Tex. 2003) ("In passing on a motion for new trial on the ground of newly discovered evidence, the court will take into consideration the weight and the importance of the new evidence and its bearing in connection with the evidence received at trial.").

Diais did not, and cannot, make this showing.  The alleged newly discovered evidence, including whether there was a defective paint job on the Range Rover, are not directly related to the liability issues in this case, which concern whether Land Rover Dallas honored its warranty or violated the DTPA.  Land Rover Dallas's evidence concerning the body damage on the Diais' vehicle was relevant

---

[15]    Diais attempts to cover his lack of diligence by arguing that Land Rover Dallas did not produce documents that would have revealed this "new evidence." (Brief at p. 39)  This argument, which is false, is a red herring.  If Diais believed there were genuine discovery issues he should have pursued them.  This argument cannot at this point excuse his lack of diligence. *See, e.g., Alvarez v. Anesthesiology Assocs.*, 967 S.W.2d 871, 882-83 (Tex. App.—Corpus Christi 1998, no pet.) (affirming the denial of a motion for new trial where party claiming discovery issues showed a lack of diligence in pursuing the issues before trial).

to, among other things, impeachment, mitigation, damages, and to the question of why Diais refused to pick up the vehicle after it was repaired. The evidence also helped the jury understand what vehicle issues were under warranty and which were not. But the jury was never asked to decide who caused the physical damage to the body of the vehicle. Thus, the jury's findings can stand without answering that question, and Diais' "newly discovered" evidence would not change those findings. *Waffle House*, 313 S.W.3d at 813.

Diais' "newly discovered" evidence is not material for another reason: there was other physical damage to the vehicle besides chips in the paint. While the vehicle was under the Diaises' care, two of its wheels—the right rear and left front—were severely damaged. The windshield was also broken (2 RR 141–44). Thus, even assuming the evidence regarding the chips in the paint was as pronounced at trial as Diais argues, and even assuming the chips in the paint were caused by a defective paint job, Diais cannot show this was more important to the jury than the evidence of physical wheel and glass damage. The same is true with regard to the alleged tires/wheel size issue and alleged engine replacement work issue.[16] At bottom, the "new" evidence regarding the paint issue is cumulative of evidence regarding other vehicle damage. As such, it cannot support a new trial.

---

[16] If Diais had any issues with regard to the tire/wheel size or Land Rover Dallas's engine replacement work, these should have been presented to Land Rover Dallas and an opportunity afforded it to inspect and repair any problems, if necessary. Instead, Diais chose to ignore this avenue, litigate the case for two years, and then proceed to trial.

*See Waffle House*, 313 S.W.3d at 813 (newly discovered evidence cannot be cumulative for purposes of granting a new trial). The trial court thus properly denied Diais' motion for a new trial.

## VIII. The Evidence Is Legally and Factually Sufficient to Support the Jury's Findings

The jury's role is sacrosanct in determining the credibility of the trial witnesses, and a jury's decision concerning disputed questions of fact must not be disturbed; intermediate courts of appeals must refrain from merely substituting their own judgment for that of the jury, even if they do not agree with a jury's verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 809–10 (Tex. 2005); *Golden Eagle Archery, Inc.v. Jackson*, 116 S.W.3d 757, 762 (Tex. 2003); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633–34 (Tex. 1986).

### A. *Standard of Review*

#### 1. Legal Sufficiency

"When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing a "'matter of law' challenge," the court must first review the trial court record for evidence that supports a negative finding on a question of liability, disregarding evidence to the contrary unless a reasonable jury could not. *Id.*; *see City of Keller*

*v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). The court considers the evidence in the light most favorable to the jury's finding under review and indulges every reasonable inference that would support it. *Id.* at 822. If there is any evidence to support the negative finding, the legal sufficiency challenge fails. *See Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982). The issue will be sustained only where the contrary position is established as a matter of law.

Moreover, evidence need not support a jury's failure to find a particular fact because the jury acts as the ultimate decision maker on the credibility of plaintiff's case and is entitled to disbelieve evidence presented by the party who bears the burden of proof. *See McGalliard v. Kuhlman*, 722 S.W.2d 694, 697 (Tex.1986). The jury may believe one witness and not another, and is free to resolve inconsistencies in trial testimony. *Id.*

### 2. Factual Sufficiency

When a party with the burden of proof attacks the factual sufficiency of an adverse jury finding, it must demonstrate that the finding was "so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust." *Dow Chem.*, 46 S.W.3d at 242; *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). The reviewing court considers and weighs all the evidence to determine if the party has met this standard. *Rowlett/2000, Ltd. v. City of* Rowlett, 231 S.W.3d

587, 590 (Tex. App.—Dallas 2007, no pet.). But the appellate court cannot act as fact finder. *Id.* That is, even if the evidence the parties presented at trial could have supported a different result, the court of appeals is not entitled to substitute its judgment for that of the jury's or to pass upon a witness's credibility. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402,407 (Tex. 1998). If the reviewing court reverses a jury finding on the basis of factual sufficiency, it must detail the evidence relevant to the issue and state with clarity how the contrary evidence greatly outweighs the evidence that supports the verdict. *See Ellis Coutny State Bank v.Keever*, 888 S.W.2d 790, 794 (Tex. 1994). "The amount of evidence necessary to affirm a judgment is far less than necessary to reverse a judgment." *Rowlett/2000*, 231 S.W.3d at 590.

> B.  *The Evidence Is Legally and Factually Sufficient to Support the Jury's Finding of No Liability on Diais' Breach of Contract Claim*

With regard to Diais' breach of contract claim, the jury was charged as follows:

> Do you find from a preponderance of the evidence that LAND ROVER DALLAS, L.P. failed to comply with its agreement with SHIHAB DIAIS and ODESSA DENTAL SOLUTIONS, P.A.?

The jury answered "NO" (1 RR 85).

Diais' breach of contract claim is based the Retail Purchase Agreement (the Agreement) in which Land Rover Dallas promises to sell and deliver Diais a new

50

vehicle, and that, in return, Diais will pay for it (1 CR 107–08). The Agreement provides that Land Rover Dallas would sell and deliver to Diais a 2012 Range Rover Sport, "as is," and with a manufacturer's warranty (*Id.*).

The evidence shows conclusively that Land Rover Dallas performed its part of the bargain. In conformance with the Agreement, Land Rover Dallas personally delivered the new 2012 Range Rover to Diais in Odessa (2 RR 124–25, 160–61). And although Land Rover Dallas did not itself provide a warranty on the vehicle, it honored the manufacturer's warranty when the Range Rover experienced engine trouble by towing the vehicle back into the dealership and promptly replacing the engine under warranty at no cost to the Diaises (2 RR 133, 137). The repaired Range Rover, which Diais continues to make payments on, sat for two years before this lawsuit was filed, ready to be picked up by its owner (2 RR 176). This is evidence that Land Rover Dallas did not breach the Agreement with Diais and for that reason alone, Diais' challenge to the sufficiency of the jury's verdict should be rejected. *See* Tex. Bus. & Com. Code § 2.106 ("Goods or conduct including any part of a performance are 'conforming' or conform to the contract when they are in accordance with the obligations of the contract.").

Even if the jury did not find the foregoing evidence conclusive, however, Diais still cannot show that the evidence is legally or factually insufficient to support the jury's verdict. There is no evidence in the record to support Diais'

51

contention that he relied on alleged representations by Land Rover Dallas prior to the signing of the Agreement. As discussed earlier in this brief, Diais' own testimony, and his wife's, proves that the Diaises made up their minds to buy a Range Rover before ever stepping foot into Land Rover Dallas or ever hearing a representation from anyone at Land Rover Dallas (2 RR 121–22). Furthermore, even assuming there was a breach at all (which there was not), the Diaises presented no evidence that they actually harmed. Indeed, the evidence shows conclusively that when the vehicle's engine failed, Land Rover Dallas promptly towed the vehicle back to the dealership, honored the manufacturer's warranty by replacing the vehicle's engine at no cost to Diais, and made it available for him to pick up. Any harm caused to Diais is a result of his own refusal to pick up his repaired vehicle.

Reviewing this evidence, it is clear that Diais does not meet his burden to show that either: (1) no evidence presented at trial supports the jury's finding that Land Rover Dallas did not breach the Agreement and the contrary was established as a matter of law, or (2) that the jury's finding that Land Rover Dallas did not breach the Agreement is so contrary to the evidence presented at trial that it is clearly wrong and unjust. *See Dow Chem. Co.*, 46 S.W.3d at 241. Hence, the jury's finding of no breach of contract cannot be disturbed.

C.      *The Evidence Is Legally and Factually Sufficient to Support the Jury's Finding of No Liability on Diais' DTPA Claim*

With regard to Diais' DTPA claim, the jury was charged as follows:

> Do you find from a preponderance of the evidence that Land Rover Dallas, L.P. engaged in any false, misleading or deceptive act or practice that SHIHAB DIAIS or ODESSA DENTAL SOLUTIONS, P.A. relied on to their detriment and that was a producing cause of damages to SHIHAB DIAIS or ODESSA DENTAL SOLUTIONS, P.A.?

The jury answered "NO" (1 RR 83).

To recover under the DTPA, Diais must show that he relied on statements made by Land Rover Dallas in connection with the sale of the vehicle. As pointed out earlier, however, Diais' own testimony establishes that before he ever even spoke to anyone at Land Rover Dallas he had already made up his mind to purchase a Range Rover (2 RR 199–22). Thus, the jury was free to find that Diais did not rely on anything represented by Land Rover Dallas in connection with the sale. . Diais' argument in this Court that the evidence *conclusively establishes* that he relied on Land Rover Dallas's alleged statements strains credibility. It must be rejected.

Under Texas Law, the jury is free to disregard even undisputed evidence if it comes from a witness the jury does not find credible. The Texas Supreme Court has explained:

53

> [j]urors are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another . . . . Jurors may disregard even uncontradicted and impeached testimony from disinterested witnesses.

*Wilson*, 168 S.W.3d at 819–20; *see Cason v. Taylor*, 51 S.W.3d 397, 408 (Tex. App.—Waco 2001, no pet.) ("[T]he fact finder has a right to believe or disbelieve any portion of the testimony."); *Lance v. USAA Ins. Co.*, 934 S.W.2d 427, 429 (Tex. App.—Waco 1996, no writ) ("The jury is free to believe or disbelieve any witness, regardless of whether the witness's testimony is later controverted.").

Courts reviewing the evidence under a legal sufficiency review must assume that jurors resolved conflicts in accordance with the verdict. *Wilson*, 168 S.W.3d at 820. Thus, to the extent that the evidence presented at trial in this case turned on the credibility of the witnesses, that was for the jury to decide. The jury was free to believe that Land Rover Dallas committed no conduct that violated the DTPA and that Diais was not deceived and/or did not rely on any representations in connection with the sale of the vehicle. This Court "may not pass upon a witness's credibility or substitute [its] judgment for that of the jury, even if the evidence might clearly support a different result." *O'Connor v. Miller*, 127 S.W.3d 249, 254 (Tex. App.—Waco 2003, pet. denied) (internal citations omitted).

Finally, the evidence in the record does not conclusively prove causation. The jury heard testimonial evidence from several witnesses that the vehicle's

engine failed, that Land Rover Dallas towed it into the repair shop and repaired it, and that it sat in the repair shop for two years before trial, untouched by Diais. The jury was free to decide that Land Rover Dallas's conduct was not a cause of any damages to Diais. In any event, the great weight and preponderance of the evidence is not against the jury's finding on Diais' DTPA claim such that its finding of no liability is manifestly unjust. For these reasons, the trial court's judgment on the jury's take-nothing judgment must be affirmed.

## PRAYER

Land Rover Dallas requests that this Court affirm the trial court's judgment in all respects. Land Rover Dallas also prays for any other and further relief, at law or in equity, to which it is justly entitled, including an award of its appeal costs.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By: /s/ Sara Berkeley Churchin
  Wade C. Crosnoe
  State Bar No. 00783903
  E-mail: wcrosnoe@thompsoncoe.com
  John W. Chambless, II
  State Bar No. 00796334
  E-mail: jchambless@thompsoncoe.com
  Sara Berkeley Churchin
  State Bar No.  24073913
  E-mail: schurchin@thompsoncoe.com

701 Brazos, Suite 1500
Austin, TX 78701
Telephone:  (512) 703-5035
Facsimile:  (512) 708-8777

Counsel for Appellees Land Rover Dallas, L.P. and Snell Motor Company Operations GP, LLC, General Partner

### CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Tex. R. App. P. 9.4(i)(2)(B) because it contains 13,223 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Sara Berkeley Churchin
Sara Berkeley Churchin

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this Appellees' Brief was served on June 26, 2015, via electronic service or email to the following counsel:

Jeffrey F. Thomason
Shane M. Bebout
Todd, Barron, Thomason, Hudman & Baxter P.C.
3800 E. 42nd Street, Suite 409
Odessa, Texas 79762-5982
Email: Thomason@toddlawfirm.com
Email: SBebout@toddlawfirm.com
Counsel for Appellants

/s/ Sara Berkeley Churchin
Sara Berkeley Churchin

**Appendix A**



**Austin • Dallas • Frisco**

☐ 1515 W. 5th Street
Austin, TX 78703
512-236-0000
landroveraustin.com

☐ 11400 N. Central Expressway
P.O. Box 740667
Dallas, TX 75374-0667
214-691-4294
landroverdallas.com

☐ 5935 Preston Road
Frisco, TX 75034
972-370-2345
landroverfrisco.com

CUST NO. 34646

## Motor Vehicle Buyer's Order

ODESSA DENTAL SOLUTION

Purchaser's Name(s): SHIHAB DIAIS

Address: 2470 E 11TH ST ODESSA TX 79761

Home Telephone: (432)349-5948 ___ Work Telephone: (432)333-4500

E-Mail: SDIAIS@AOL.COM

Delivery Date: 09/19/2012

Deal Number: 1949

Date: 09/19/2012

County: ECTOR

| YEAR | MAKE | | MODEL | | COLOR | | STOCK NO. |
|------|------|--|-------|--|-------|--|-----------|
| 2012 | LAND ROVER | | RANGE RVR SPORT | | FUJI WHITE | | D12375 |

| SERIAL NO. | | ODOMETER READING | | SALESPERSON: |
|------------|--|------------------|--|--------------|
| SALSH2E44CA748119 | | ☐ NOT ACCURATE 22 | | MICHAEL P MCGOVERN |

THE VEHICLE IS:  PRIOR USE DISCLOSURE:
☒ NEW   ☐ USED   ☐ DEMONSTRATOR   ☐ FACTORY EXECUTIVE/OFFICIAL   ☐ RENTAL   ☐ CERTIFIED

| WARRANTY STATEMENT | Amount |
|---|---|
| MSRP | 77645.00 |

**WARRANTY STATEMENT**

We are selling this Vehicle to you AS-IS and we expressly disclaim all warranties, express or implied, including any implied warranties of merchantability and fitness for a particular purpose, unless the box beside "USED VEHICLE LIMITED WARRANTY APPLIES" is marked below or we enter into a service contract with you at the time of, or within 90 days of, the date of this transaction. All warranties, if any, by a manufacturer or supplier other than our Dealership are theirs, not ours, and only such manufacturer or supplier shall be liable for performance under such warranties. We neither assume nor authorize any other person to assume for us any liability in connection with the sale of the Vehicle, and related goods and services. CONTRACTUAL DISCLOSURE STATEMENT. (USED VEHICLES ONLY) The information you see on the window form for this Vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
☐ USED VEHICLE LIMITED WARRANTY APPLIES. We are providing the attached Used Vehicle Limited Warranty in connection with this transaction. Any implied warranties apply for the duration of the Limited Warranty.

| | |
|---|---|
| CASH PRICE OF VEHICLE | 100854.00 |
| OPTIONAL ACCESSORIES: | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| TOTAL SELLING PRICE | 100854.00 |
| LESS: TRADE-IN ALLOWANCE | N/A |

**TRADE-IN VEHICLE INFORMATION**

| Year: | Make: | Model: | Lic #: |
|-------|-------|--------|--------|
| Serial No.: | | Odometer Reading: ☐ Not Accurate | |
| Trade-In Allowance: N/A | | Balance Owed & Lienholder: | |

| | |
|---|---|
| SUBTOTAL | 100854.00 |
| SALES TAX | 6303.38 |
| DEALER'S INVENTORY TAX | 227.83 |

Dealer's Inventory Tax: The Dealer's Inventory Tax charge is intended to reimburse the Dealer for ad valorem taxes on its motor vehicle inventory. The charge, which is paid by the Dealer to the county tax assessor-collector, is not a tax imposed on a consumer by the government, and is not required to be charged by the Dealer to the consumer.

*A Documentary Fee is not an official fee. A documentary fee is not required by law, but may be charged to buyers for handling documents relating to the sale. A documentary fee may not exceed a reasonable amount agreed to by the parties. This notice is required by law.

| | |
|---|---|
| DOCUMENTARY FEE* | 85.00 |
| STATE INSPECTION FEE | 23.75 |
| DEPUTY SERVICE FEE | N/A |
| LICENSE FEE | 71.00 |
| TITLE FEE | 33.00 |
| | |

**LIEN TO**

| | |
|---|---|
| Name: JPMORGAN CHASE BANK NA | |
| Address: PO BOX 901098 FORT WORTH TX 76101-2098 | |
| Contacted: | Lien Date: 09/19/2012 |
| By: | Mat Date: 09/20/2017 |

| | |
|---|---|
| EXT. SERVICE AGREEMENT | N/A |
| TOTAL DUE | 107597.96 |
| PLUS: BALANCE OWED ON TRADE-IN | N/A |
| DEPOSIT/PARTIAL PAYMENT | N/A |
| CASH DOWN | 11200.00 |
| UNPAID BALANCE DUE | 96397.96 |

**ACCESSORIES TO BE INSTALLED**

| |
|---|
| |
| |
| |
| |

☐ DEPOSIT/ ☐ PARTIAL PAYMENT: The sum of $___N/A___ was received from you as a Deposit/Partial Payment. It is not refundable, except as set forth in this Agreement. In the case of a Deposit, we will refrain from selling the Vehicle for N/A days.

X _____

I have read and accept the terms and conditions of this Agreement, including those that appear on the reverse side, and hereby acknowledge that this Agreement is complete and accurately reflects the agreements between the Dealership and myself. I further acknowledge receipt of a copy of the Agreement. This Agreement is not binding upon Dealer until signed by an Authorized Dealership Representative. As buyer of the above described vehicle, I understand and agree that the seller may make a profit on the sale of the vehicle, any add-on equipment, insurance product, financing, warranty or service contract, repair or any other product or service sold by the seller.

Odessa Dental Solution by _____ Ins, CEO
Purchaser

_____
Purchaser

Accepted by Authorized Dealership Representative

CUSTOMER COPY



EXHIBIT 1

## ADDITIONAL AGREEMENTS BETWEEN THE DEALERSHIP AND PURCHASER(S)

**Terms Used In This Agreement:** This Retail Purchase Agreement contains the following words and phrases that appear throughout this Agreement and have particular meanings:

- **Agreement** - Means this Retail Purchase Agreement together with any documents incorporated into this Agreement by reference, whether such reference is made in this Agreement or the document itself.
- **You, Your** - Means the Purchaser(s) identified on the front side of this Agreement.
- **We, Us, Our** - Means the Dealership that is identified on the front side of this Agreement and its Authorized Representatives.
- **Manufacturer** - Means the company that manufactured the vehicle.
- **Vehicle** - Means the Vehicle that you are purchasing as described on the front of this Agreement.
- **Trade-In Vehicle** - Means the Vehicle you are delivering to us as part of this transaction as identified on the front side of this Agreement.

**Our Right to Increase the Price:** We may increase the price of the Vehicle after we accept this Agreement if the Trade-In Vehicle is reappraised, the addition of new equipment is required by state or federal law, or the increase is caused by state or federal tax rate changes. If the price is increased, you may cancel this Agreement with full refund of any Deposit/Partial Payment, provided that the cancellation occurs prior to you taking delivery of the Vehicle.

**Manufacturer's Design Changes:** In the event the Manufacturer changes or modifies the design or any part or accessory of the Vehicle after your order for the Vehicle has been entered by us, you will not have any claim or right against us if the Vehicle does not contain such changes or modifications, nor shall we be required to effect such changes or modifications to the Vehicle.

**Remedies Upon Cancellation for Our Failure to Deliver:** You agree that we are not liable for any damages resulting from our failure to deliver the Vehicle if the failure is caused by accident, fire, act of nature or any other causes beyond our control. This Agreement may be renegotiated or canceled (with full refund of any Deposit/Partial Payment) if the Vehicle is not delivered to you as specified on the front side of this Agreement. If you have delivered a Trade-In Vehicle to us, the Trade-In Vehicle shall be returned to you if we have not already sold it. If we have sold the Trade-In Vehicle prior to your cancellation, you will be paid the agreed upon Trade-In Allowance, less the Balance Owed on the Trade-In Vehicle if we have paid the Balance Owed to the Lienholder. We may keep any portion of the amount you have paid to us as a Deposit/Partial Payment to offset against the amount you owe us. If the actual amount you owe us is greater than the amount of the Deposit/Partial Payment, you agree to pay the difference to us. If the actual amount you owe us is less than the amount of the Deposit/Partial Payment, we will pay the difference to you.

**Your Representations Regarding the Trade-In Vehicle:** Any Trade-In Vehicle delivered by you to us in connection with this transaction shall be accompanied by documents sufficient to enable us to obtain a Certificate of Title to the Trade-In Vehicle in accordance with applicable state law. You warrant that the Trade-In Vehicle delivered to us is properly titled to you: has never been titled as or declared a salvage, junk, reconstructed, rebuilt, flood, lemon buyback, or total loss claim vehicle; that you have the right to sell or otherwise, convey such vehicle, that such vehicle is free and clear of liens or encumbrances, except as may be noted on the front side of this Agreement, that all emission control equipment is on the vehicle and in satisfactory working order; and, unless you have disclosed otherwise that you have not removed any equipment from the vehicle subsequent to our appraisal and the odometer reading shown is accurate.

**Balance Owed on Trade-In Vehicle:** If you are delivering a Trade-In Vehicle in connection with this transaction and the actual amount of the Balance Owed on the Trade-In Vehicle is greater than the amount of the Balance Owed as listed in this Agreement, you agree to pay the difference to us. If the actual amount of the Balance Owed is less than the amount listed, we will pay or credit the difference to you.

**Our Appraisal of Your Trade-In Vehicle:** If you are delivering a Trade-In Vehicle to us in connection with this transaction and the delivery will not be made until delivery of the Vehicle being purchased, we shall have the right to reappraise your Trade-In Vehicle at the time of delivery. The reappraised amount shall be the amount allowed for the Trade-In Vehicle in this transaction. If you are dissatisfied with the reappraisal, you may cancel this Agreement with full refund of any Deposit/Partial Payment, provided that the cancellation occurs prior to you taking delivery of the Vehicle.

**Your Failure to Perform Obligations:** In the event of any failure by you to perform your obligations under this Agreement, including but not limited to, any failure to take delivery of or to pay the agreed upon price for the Vehicle, we shall be permitted to retain an amount equal to any actual damages we incur due to your default. If you have delivered a Trade-In Vehicle to us as part of this transaction, we may return the Trade-In Vehicle to you if we have not already sold it. If we have already sold the Trade-In Vehicle, we will refund the agreed upon Trade-In Allowance less the Balance Owed on the Trade-In Vehicle (if we have paid the Balance Owed to the Lienholder) and any reasonable expenses incurred by us in connection with preparing or reconditioning the Trade-In Vehicle for sale. We may keep any portion of the amount you have paid to us as a Deposit/Partial Payment to offset against the amount you owe us. If the actual amount you owe us is greater than the amount of the Deposit/Partial Payment, you agree to pay the difference. If the actual amount you owe is less than the amount of the Deposit/Partial Payment, we will pay you the difference.

**Spot Delivery Agreement:** If you have accepted delivery of the Vehicle subject to financing being obtained pursuant to a Spot Delivery Agreement and the proposed Finance Contract is not approved under the agreed upon terms, you may cancel this Agreement. If you cancel this Agreement, we will return your Trade-In Vehicle and any payments you have made, provided that the Vehicle delivered to you pursuant to this Agreement is returned to us in the same condition as delivered to you and you pay us for any damage that occurred to the Vehicle arising out of your use, possession and control of the Vehicle. If the Trade-In Vehicle has been sold, we will pay you the agreed upon Trade-In Allowance, less the Balance Owed, if we have paid the Balance Owed to the Lienholder.

**Other Products and Lending Sources:** You are not required to purchase any other goods or services from us, nor are you required to obtain financing for this transaction with a particular lending source. In the event this Agreement includes a charge for other goods or services for which you must complete an application for coverage, and for any reason such coverage cannot be provided, you will receive a credit for the amount charged. If the cost of the other goods or services was included in the amount to be financed in connection with this transaction, then this credit will be applied to the outstanding balance you owe the lender.

**Entire Agreement and Signing of Other Documents:** The front and back of this Agreement and any other documents incorporated herein by reference comprise the entire agreement affecting this transaction. No other agreement or understanding of any nature has been made. You agree to sign any and all documents necessary to complete the terms of this transaction.

**AT THIS DEALERSHIP:**

- A customer may obtain their own financing.
- The finance charge may be negotiable.
- The dealership may assign the retail installment contract.
- A person may acquire a retail installment contract or an outstanding balance under a contract from another person the terms, including the price, to which they may agree. No person acquiring or assigning a retail installment or any balance under a contract, has any duty to disclose to any other person the terms on which a contract or balance under a contract is acquired, including any discount or difference between the rates, charges, or balance under the contract and the rates, charges, or balance acquired (Finance Code §348.301).